

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2000

# Keefe v. Prudetial Property

Precedential or Non-Precedential:

Docket 99-1292

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Keefe v. Prudetial Property" (2000). *2000 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 2, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-1292

CINDY KEEFE

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY,
      Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-03312)
District Judge: Honorable Robert S. Gawthrop, III

Argued: September 27, 1999

Before: BECKER, Chief Judge, McKEE, and
NOONAN,* Circuit Judges.

(Filed: February 2, 2000)

       BENJAMIN E. ZUCKERMAN,
        ESQUIRE (ARGUED)
       Cozen and O'Connor
       The Atrium - 5th Floor
       1900 Market Street
       Philadelphia, PA 19103

Counsel for Appellant

_____

* Honorable John T. Noonan, Jr., United States Circuit Judge for the
Ninth Circuit, sitting by designation.

       JOSEPH F. RODA, ESQUIRE
        (ARGUED)
       Roda & Nast
       801 Estelle Drive
       Lancaster, PA 17602

       Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge:

This bad faith insurance claim, founded on diversity jurisdiction, presents an important question of Pennsylvania insurance law: whether a carrier offering uninsured motorist (UM) coverage has a duty to pay an undisputed part of a UM claim while another part remains in dispute. However, because this case is before us in the unusual procedural posture of an appeal from a consent judgment, before we reach this question we must consider whether the stringent conditions for appellate jurisdiction over a consent judgment have been met. The case also presents an interesting issue of justiciability insofar as the consent judgment is founded on a settlement of the underlying claim under which the plaintiff gets more or less depending on the legal rule we apply on appeal.

The plaintiff, Cynthia Keefe, suffered three injuries in a motor vehicle accident with an uninsured motorist. Two of her injuries--to her knee and to her shoulder--were clearly caused by the accident. The third, an injury to her wrist, was more difficult to evaluate because Keefe had a preexisting problem with her wrist, and it was not immediately clear how much of the post-accident condition of her wrist was attributable to the accident. About eighteen months after the accident, the defendant, Prudential Property and Casualty Insurance Company, Keefe's insurance carrier, settled her UM claim for the highest amount available to her under her policy. Although Keefe acknowledges that she failed to provide medical records regarding the preexisting problems with her wrist until less than a month before Prudential agreed to settle

2

her claim, she asserts in this suit that Prudential acted in bad faith by failing to settle her claims for her knee and shoulder injuries while it was awaiting more information regarding her wrist injury.

At close of discovery, the parties filed cross motions for summary judgment. In ruling on the motions the district court held that: (1) Pennsylvania would recognize a UM claim under the circumstances; (2) a reasonable jury could conclude that Prudential, in administering Keefe's uninsured motorist claim, violated its duty of good faith; and (3) genuine issues of material fact nonetheless precluded the entry of summary judgment in favor of either party. The parties thereupon settled the case and stipulated to the entry of judgment in favor of the plaintiff in the amount of one dollar. Prudential now seeks to appeal from that judgment.

We consider first whether Prudential waived the right to an appeal by consenting to the entry of judgment against it, but are satisfied that the understanding between the parties that Prudential would appeal was sufficiently clear to avoid waiver. We also conclude that the parties remain adverse and hence that this appeal presents a genuine case or controversy under Article III of the Constitution. We then turn to the merits, predicting that the Pennsylvania Supreme Court would not recognize a bad faith claim under the circumstances of this case, and we therefore reverse and remand with directions to enter judgment for Prudential.

I. Facts and Procedural History

In August 1995, Keefe was injured in an automobile accident with an uninsured motorist. The next day, she contacted Prudential to report the accident. Her policy with Prudential included $200,000 in UM coverage, under which an insured can recover damages from his or her own insurer for personal injuries sustained in an accident caused by the owner or driver of an uninsured vehicle. The contract provided that, if Prudential and Keefe could not agree on the amount of compensatory damages due, either party could make a written demand for arbitration. Subject

to coverage limits, compensatory damages are "the amount that an insured is legally entitled to recover for bodily injury but could not collect from the owner or driver of the uninsured motor vehicle," including damages for pain and suffering. Prudential's representative determined that the driver of the vehicle with whom Keefe had had the accident was uninsured and sent her an application for UM benefits.

Keefe initially reported two injuries in the accident: an injury to her right shoulder and an injury to her left knee. Keefe underwent arthroscopic surgical repair of her shoulder in February 1996 and her knee in July 1996, and provided records regarding these injuries to Prudential. In February 1996, Keefe added a report of an injury to her right wrist. Keefe's wrist injury was the most serious of her injuries, but assessing it was difficult because Keefe had a preexisting condition in her wrist. In June of 1995, about three months before the accident, Keefe had undergone a partial wrist fusion surgery. Several weeks after the accident, Keefe visited her wrist specialist, who monitored her progress throughout the fall and eventually concluded both that the partial fusion had not healed properly and/or was aggravated by the accident and that Keefe required a full wrist fusion. Keefe underwent the surgery to fuse her wrist in April 1996.

The medical records that Keefe initially provided to Prudential lacked any information regarding the condition of her wrist prior to the accident. Without adequate records regarding the preexisting condition in her wrist, Prudential could not determine whether the wrist fusion was required because of the accident or because of the preexisting condition. As a result, Prudential requested, and Keefe's lawyer agreed to provide, medical records regarding her preexisting condition. Despite the fact that he had not yet produced the promised medical records relevant to Keefe's preexisting wrist problems, Keefe's lawyer asked Prudential to settle her claim at or near the policy limits on three occasions between March and June of 1996. These requests were for settlement of the entire claim, including the wrist injury.

Keefe's attorneys finally made the full records regarding Keefe's wrist condition available to Prudential in mid-

4

December 1996. On January 21, 1997, Keefe's lawyer advised Prudential that Keefe was having financial difficulty and, for the first time, requested that Prudential make at least a partial payment. Keefe concedes that she never requested a partial settlement for the shoulder and knee injuries before January 1997. In response to this request, Prudential decided to make a settlement offer. By the end of January 1997, Prudential agreed to settle Keefe's claim for $200,000, her policy limit, which they paid her on March 3, 1997. Prudential represents that the decision to settle for the policy limits was made before it conducted a full review of the medical records and even though there were several grounds for believing that the case was not worth $200,000.

In May 1997, Keefe filed this suit, alleging (1) that Prudential violated PA. Stat. Ann., tit. 42, S 8371 (West 1998), Pennsylvania's law imposing a duty of good faith with respect to insurance claims; and (2) that Prudential was liable for breach of the common law contractual duty of good faith and fair dealing for failing to compensate her for her knee and shoulder injuries while it gathered more information about the preexisting condition in her wrist. Prudential counterclaimed alleging violation of PA. Stat. Ann., tit. 42, S 8371 (West 1998), and a breach of the duty of good faith and fair dealing based on Keefe's delay in providing medical records. The district court had jurisdiction over these claims pursuant to 28 U.S.C.S 1332.

At the close of discovery, the parties filed cross motions. Prudential sought judgment on the pleadings, or, in the

alternative, summary judgment, on Keefe's claims that Prudential violated S 8371 and committed a breach of the common law contractual duty of good faith and fair dealing. Keefe sought summary judgment on Prudential's counterclaim. The district court denied Prudential's motion and granted in part and denied in part Keefe's motion, ruling that there were genuine issues of material fact regarding (1) whether Prudential ever placed a specific value on Keefe's knee and shoulder injuries; and (2) whether Keefe's delay in providing medical records regarding her wrist was a reasonable basis for the delay in payment. In so doing, the court concluded that a

reasonable jury could find that a defendant's refusal to make an unconditional payment of an undisputed amount of a UM claim while some additional portion of the claim remained in dispute violated S 8371.

Prudential moved for reconsideration on this issue, arguing that UM insurers have no duty under Pennsylvania law to pay an undisputed part of a UM claim while any other part remains in dispute. The district court denied Prudential's motion to reconsider, but certified an interlocutory appeal pursuant to 28 U.S.C. S 1292(b). This court denied Prudential's S 1292(b) petition (in which Keefe had joined). The parties thereupon entered into a stipulation providing that the district court would enter judgment in favor of Keefe in the amount of one dollar. The district court entered a one paragraph final judgment pursuant to the stipulation, and Prudential now appeals from that consent judgment.

II. Appellate Jurisdiction

A. The Stipulation

The stipulation between the parties does not settle the factual disputes between them. Instead, the parties recite their opposing versions of the facts and then set forth their agreement that the legal issue in question, i.e. whether a reasonable jury could find that a defendant's refusal to pay unconditionally the undisputed amount of a plaintiff's uninsured motorist claim constitutes bad faith,

> is of sufficient importance to this case that[the parties] have reached an agreement to resolve this case based solely on the ultimate resolution of this issue on appeal, without the need for trial. Under this agreement: (a) The record for appeal will consist of matters developed during discovery, as governed by rulings of the district court in connection therewith. (b)

Defendant will pay to Plaintiff an agreed amount that depends upon the outcome of the appeal, and encompasses all contingencies on an appeal, thereby allowing the entry of a final judgment by stipulation.

6

Although the stipulation clearly contemplates an appeal, the defendant, in agreeing that the judgment should be entered against it, made no explicit reservation of the right to appeal. We turn to the question whether the defendants have waived their right to appeal.

B. Waiver

This court has acknowledged the general rule that a party cannot appeal a consent judgment, as well as two limited exceptions to that rule. See Atlantic Richfield Corp. v. Sharon Steel Corp., 918 F.2d 434, 437 n.3 (3d Cir. 1990) (noting rule that a party can only appeal from a consent judgment if there was a failure of consent or the court lacked subject matter jurisdiction to enter the consent judgment); see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992) (party who consents to the entry of judgment forfeits any right to appeal from that judgment); Clapp v. Commissioner, 875 F.2d 1396, 1398 (9th Cir. 1989) (same).

We have never considered, however, the appealability of a consent judgment where the party seeking to appeal has made explicit in a stipulation its intent to appeal the consent judgment. Accordingly, we must decide whether it is possible to consent to judgment and explicitly preserve the right to appeal, and, if so, whether the parties' clear understanding that Prudential would appeal the denial of summary judgment was sufficient to preserve the right to appeal.

Appeals from judgments entered by consent are disfavored because, as the purpose of a consent judgment is to settle the case without further litigation, an appeal would undermine the agreement reached by the parties. Moreover, a party "should not be left guessing about the finality and hence efficacy of the settlement." Ass'n of Community Organizations for Reform Now v. Edgar, 99 F.3d 261, 262 (7th Cir. 1996). When it is clear from the agreement between the parties that the losing party intends to appeal, however, it is unlikely that an appeal will undermine the settlement agreement or catch a party unawares. Indeed, in some situations, the option to craft a

7

settlement agreement that provides for the possibility of an appeal on some contested issue may facilitate settlement of other issues. Recognizing these principles, some of our sister circuits have held that a party to a consent decree or other judgment entered by consent may appeal from that decree or judgment if it explicitly reserves the right to do so. See, e.g., INB Banking Co. v. Iron Peddlers, Inc., 993 F.2d 1291, 1292 (7th Cir. 1993); Dorse v. Armstrong World Industries, Inc., 798 F.2d 1372, 1375 (11th Cir. 1986); Coughlin v. Regan, 768 F.2d 468, 470 (1st Cir. 1985).

Adopting this approach, we conclude that, when the losing party in a consent judgment makes its intent to appeal clear in its agreement with the opposing party, an appeal from a consent judgment does not undermine the settlement. Where the terms of a stipulation clearly show that one of the parties has an unequivocal intention to appeal, the court has "discretion to accept the appeal insofar as it relates to a prior (contested) order notwithstanding the [parties'] later consent to the entry of the final judgment itself." BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, 132 F.3d 824, 828 (1st Cir. 1997). Where as here, it is clear from the record that the parties stipulated to a consent judgment with the express understanding that the party against whom judgment was entered would appeal a contested issue decided by the district court, there is no reason to hold the right to appeal waived. Prudential has not waived the right to appeal.

C. The Effect of the Stipulation

It is our duty to assure ourselves of the existence of subject matter jurisdiction even if the parties fail to raise the question. See Commonwealth of Pennsylvania v. Flaherty, 983 F.2d 1267, 1275 (3d Cir. 1992). At oral argument, we raised with counsel the possibility that their settlement agreement mooted the controversy between them or put them into a position in which they lacked the adversity necessary to meet the case or controversy requirement of Article III. The parties filed supplemental briefing on this issue. They also provided information on the terms of their private settlement agreement, which

reflected that Prudential has agreed to pay Keefe one amount if Prudential's argument prevails; a second (and higher) amount if we do not decide the issue; and a third (and still higher amount) if Keefe's argument prevails.

We are satisfied that the settlement has not mooted the

controversy. As the stipulation makes clear, the parties continue to be adverse regarding the correctness of the district court's prediction of the cognizibility of Keefe's bad faith claim under Pennsylvania law. They have, in effect, only settled a damages issue.

In Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), the Supreme Court considered a letter agreement between two parties providing that, if the Court denied certiorari or granted certiorari and affirmed, the defendant would pay the plaintiffs $400, but if the court granted certiorari and reversed, the plaintiffs would receive nothing. The Court held that the agreement did not moot the controversy between them, reasoning that:

> respondents continue to seek damages to redress alleged violations of the Fair Housing Act. The letter agreement, if approved by the district court, would merely liquidate those damages. If respondents have suffered an injury that is compensable in money damages of some undetermined amount, the fact that they have settled on a measure of damages does not make their claims moot. Given respondents' continued active pursuit of monetary relief, this case remains "definite and concrete, touching the legal relations of parties having adverse legal interests."

Id. at 371 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)).

Like the plaintiffs in Havens, Keefe continues to seek monetary damages. The agreement between the parties here is an agreement to liquidate damages similar to a high-low settlement agreement, in which the parties agree on the minimum and maximum amount that the plaintiff will recover depending on the outcome of a suit. See United States Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 308 (3d Cir. 1985) (describing a high-low settlement agreement). Their positions are truly adverse with respect to the critical

legal issue that they ask us to resolve, and the dispute between them is not feigned. Moreover, we have reviewed the private settlement agreement and are satisfied that both parties have a significant stake in the outcome. We therefore conclude that we have subject matter jurisdiction over this appeal.

Our jurisdiction over this appeal includes review of the issue decided by the district court in the order denying summary judgment. Although an order denying a motion for summary judgment is an interlocutory order that

cannot be immediately appealed, after final judgment the losing party may seek review of an issue decided in an order denying summary judgment to the extent that that ruling was dispositive of some issue relevant on appeal. As this Court has explained, "since . . . only a final judgment or order is appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings." Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir. 1990) (quoting Elfman Motors Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir. 1977); see also In re Westinghouse Securities Litigation, 90 F.3d 696, 706 (3d Cir. 1996) (holding that prior interlocutory orders merge with final judgment and the interlocutory orders may be reviewed on appeal from the final order). Thus, the entry of final judgment in this case opens the door for us to review the district court's order denying summary judgment, in which it ruled that an insurance company's refusal to pay unconditionally the undisputed amount of an insured's uninsured motorist claim could constitute bad faith under Pennsylvania law.

III. Would Pennsylvania Recognize A Bad Faith Claim
       Under These Circumstances?

Although there is no common law remedy for bad faith in the handling of insurance claims under Pennsylvania law, see D'Ambrosio v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 431 A.2d 966 (Pa. 1981), the Pennsylvania legislature has provided a statutory remedy. The statute provides that

> [i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith

10

> toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against t he insurer.

PA. Stat. Ann., tit. 42, S 8371 (West 1998).

In the insurance context, the Pennsylvania Superior Court has explained that the term bad faith includes " `any frivolous or unfounded refusal to pay proceeds of a policy.' " Terletsky v. Prudential Property and Casualty Insurance Co.,

649 A.2d 680, 688 (Pa. Super. 1997) (quoting Black's Law Dictionary 139 (6th ed. 1990)). " `For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.' " Id. Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. See id. ; Klinger v. State Farm Mutual Automobile Ins. Co., 115 F.3d 230 (3d Cir. 1997); Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994).

Prudential asserts that an insured never has an obligation to make a partial payment on an UM claim, because the pain and suffering component of compensatory damages cannot be divided into separate assessments for each injury. Surprisingly, there are no Pennsylvania appellate decisions on this subject. The authority in other jurisdictions is divided, and in some cases deals with statutes markedly different from Pennsylvania's bad faith statute. It is useful nonetheless to canvass the cases, as they provide background and context. Arizona and Alabama have rejected similar claims, but the Arizona claimant

11

sought relief under an implied covenant of good faith and fair dealing (rather than a statute regarding bad faith) and the Alabama defendant was able to rely on Alabama decisions holding that there can be no undisputed amount prior to an arbitration award or the execution of a release. See Voland v. Farmers Ins. Co. of Ariz., 943 P.2d 808 (Ariz. 1997); LeFevre v. Westberry, 590 So.2d 154 (Ala. 1991).

In Millers Mutual Ins. Ass'n of Illinois v. House, 675 N.E.2d 1037 (Ill. App. 1997), an Illinois intermediate appellate court held that, where the parties disputed the limits of coverage, the trial court did not abuse its discretion in holding that the insurance company's failure to pay the amount of the lower policy limit to the claimant while litigation was pending--an amount it admitted it owed--violated an Illinois statute prohibiting unreasonable delay in paying claims. The parties did not dispute that the plaintiff would be entitled to recover at least the lower limit. In Kehoe v. Lightning Rod Mutual Ins. Co., 685 N.E.2d 255 (Ohio App. 1996), the Ohio court of appeals held that whether a failure to pay an undisputed portion of UM claim for eleven months after a jury verdict in favor of the plaintiff constituted bad faith was a question for the jury. Unlike

this case, however, the claim there was for underinsured motorist coverage, and the undisputed amount that the defendant failed to pay to the plaintiff was the amount that the defendant had received from the underinsured motorist's insurance company before the defendant entered the case to protect its subrogation interests.

Finally, the Louisiana Supreme Court has held that, if the insured shows that he was not at fault, that he was injured, and that the other driver was underinsured, the insurer cannot refuse to pay any damages until the insured is able to prove the exact extent of his general damages, but must unconditionally tender the reasonable amount that is due. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La. 1985). The McDill case, however, involved a claim that was clearly worth more than the $10,000 limit of the plaintiff 's policy, and the Louisiana statute at issue provided for penalties for any failure to pay a claim within sixty days after receipt of satisfactory proofs of loss from the insured that was found to be arbitrary, capricious, or without

12

probable cause. See id. at 1088–89. In sum, the authority from other jurisdictions provides some helpful guidelines, but has no great persuasive effect in our task of predicting Pennsylvania law.

At all events, we need not go so far as Prudential asks. Based on Terletsky, 649 A.2d 680, and the cases applying it, we are convinced that, if Pennsylvania were to recognize a cause of action for bad faith for an insurance company's refusal to pay unconditionally the undisputed amount of a UM claim, it would do so only where the evidence demonstrated that two conditions had been met. Thefirst is that the insurance company conducted, or the insured requested but was denied, a separate assessment of some part of her claim (i.e., that there was an undisputed amount). The second is, at least until such a duty is clearly established in law (so that the duty is a known duty), that the insured made a request for partial payment.

Until a partial final assessment is made or requested, there is a reasonable basis for failing to make a offer of partial settlement: namely, it is unclear what the separate injuries are worth, or what the plaintiff would have been legally entitled to recover for bodily injury if the uninsured motorist had had coverage. A request for a partialfinal assessment or evidence that the insurer conducted such a partial final assessment is a precondition of success on a bad faith claim because of the subjective components of a pain and suffering award. As the Arizona Supreme Court has noted, "a personal injury claim is unique and generally

not divisible or susceptible to relatively precise evaluation or calculation. The `pain and suffering'/general damage elements of a personal injury claim . . . are inherently flexible and subject to different and potentially changing evaluations." Voland v. Farmers Insurance Company of Arizona, 943 P.2d at 812 (citing Lefevre v. Westberry, 590 So.2d 154, 163 (Ala. 1991)).

Our decision in Klinger, 115 F.3d 230, 234-35, is not to the contrary. In upholding a jury verdict for the plaintiffs on an uninsured motorist claim brought under Pennsylvania law, it suggests the principle that there must be some undisputed amount before the insurance company can be liable for bad faith refusal to pay. Id. Klinger held

13

that "[a] rational jury could well have concluded that [the insurer], by not making an offer to [the insured] based upon some objective criteria it believed compensated adequately for her injuries, knowingly or recklessly acted without reasonable basis," but only after noting that "the extent of [the insured's] injuries had become clear" to the defendant insurance company. Id. at 235.

The district court correctly recognized that Pennsylvania would require a plaintiff in Keefe's position to establish that there was an undisputed amount that the defendant would owe to her. The parties dispute whether Prudential ever made a partial assessment of Keefe's knee and shoulder injuries. Keefe argues that Prudential's records from 1996 regarding the value of her injuries establish that Prudential had at least assessed the lower limit of liability that was an "undisputed amount" it would owe to Keefe. Prudential denies that these records establish that it had assessed an undisputed amount and characterizes them instead as preliminary estimates made with the understanding that some information was still missing, including information on the wrist injury.

According to Prudential, without information regarding the preexisting condition in the wrist, it was simply not in a position to make anything more than a preliminary evaluation of Keefe's pain and suffering attributable to the accident. The district court ruled on the motions for summary judgment that there was a genuine issue of material fact as to whether, at any point during 1996, there was an undisputed amount that Prudential knew it would have to pay to Keefe. We view this decision as a determination that there was a genuine issue of material fact as to the first prerequisite we have identified, i.e. whether the insurance company conducted, or the insured requested but was denied, a separate assessment of some

part of her claim. We agree with the district court that this genuine issue of material fact precluded summary judgment. Were this the only prerequisite that we predicted Pennsylvania would make for such a claim, we would affirm the district court.

However, as noted above, we also believe that Pennsylvania would require that the plaintiff establish that

14

she had made a request for partial payment. Until a plaintiff makes a request for partial payment, the insurance company has no notice that the plaintiff claims a partial payment. Keefe argues that her requests for the policy limits "implicitly included a request for partial payments," but we are not persuaded that Pennsylvania is likely to consider it unreasonable for an insurance provider to treat a request for the policy limits as just that--a request for the policy limits. Cf. Kehoe, 685 N.E.2d at 256 (holding that question of bad faith was one for jury where there was a clear undisputed minimum amount that the insurer would have to pay on a UM claim, but noting that the insured made a demand for partial payment). This is especially true given that under Pennsylvania law bad faith must be proven by clear and convincing evidence. See Cowden v. Aetna Casualty & Surety Co., 134 A.2d 223, 229 (Pa. 1957); Hall v. Brown, 526 A.2d 413, 416 (Pa. Super. 1987); see also Polselli v. Nationwide Mutual Fire Insurance Company, 23 F.3d at 750 (3rd Cir. 1994).

Without a request for partial payment, and unless and until Pennsylvania recognizes a duty to make partial payments, we believe that an insurance company does not act in bad faith when it assumes that an insured desires settlement of the entire claim, at least where the contract provides for general damages, and does not explicitly require separate assessments and payments for separate injuries in the calculation of compensatory damages. We do not believe Pennsylvania would require an insurance company--on its own initiative--to determine whether a partial payment is due under an UM contract before information regarding all of the injuries has been provided to it. To require such initiative would be tantamount to imposing a duty on the insurance company above and beyond the duty imposed by the implied duty of good faith and fair dealing. Under the duty of good faith and fair dealing, the insurer need only "accord the interest of the insured the same faithful consideration it gave its own interest," United States Fire Insurance Company v. Royal Insurance Company, 759 F.2d 306, 311 (3rd Cir.1985) (citing Cowden v. Aetna Casualty and Surety Co., 134 A.2d 223 (Pa. 1957); the good faith standard requires that the

evaluation of the case by the insurance company must be

15

"honest, intelligent and objective." Id. ; see also Shearer v.
Reed, 428 A.2d 635, 638 (Pa. Super. 1981)). Under
Pennsylvania law, a fiduciary duty higher than the duty of
good faith and fair dealing does not arise out an insurance
contract until an insurer asserts a stated right under the
policy to handle all claims asserted against the insured. See
Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320,
322 (Pa. 1963); see also Lee R. Russ & Thomas F. Segalia,
3 Couch on Insurance S 40.7 (3d ed. 1995).

When this requirement is applied to these facts, Keefe
cannot make out a claim for bad faith under Pennsylvania
law. As Keefe concedes that she never requested a partial
settlement for the shoulder and knee injuries before
January 1997, she cannot show that she made some sort
of request for partial payment. Accordingly, we conclude
that the district court erred in denying summary judgment
to Prudential. The judgment of the district court will
therefore be reversed, and the case remanded with
directions to enter judgment for Prudential.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16