Vance WILLIAMS, Susan Steier, Lori Anne Larell, Thaddaeus Peay, Paul McCaffrey, Carole Johnson, William Siegmund, Mark Culver, Stephen Mamuzich, Jr. and Karen Tar, on their own behalf and as representative of classes of similarly situated persons, Appellants,

v.

NATIONWIDE MUTUAL INSURANCE CO., Allstate Insurance Co., State Farm Mutual Automobile Insurance Co., Erie Insurance Group, Liberty Mutual Insurance Company, National Union Fire Ins. Co. of Pittsburgh, PA, Progressive Insurance Co., Pennsylvania Assigned Risk Plan, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 29, 2000.
Filed April 12, 2000.

Stanley B. Seigel, Huntingdon Valley, and Donald Yablon, Philadelphia, for Williams, Steier, and Larell, appellants.

Stewart J. Eisenberg, Philadelphia, for Peay, appellant.

Mark J. Levin, Philadelphia, for Allstate, appellee.

William C. Foster, Philadelphia, for Liberty Mut., appellee.

James C. Haggerty, Philadelphia, for Nationwide, appellee.

James T. Moughan, Plymouth Meeting, for State Farm, appellee.

Before McEWEN, President Judge, and JOHNSON and OLSZEWSKI, JJ.

JOHNSON, J.:

¶ 1 The representative parties in this class action suit assert that various automobile insurance carriers breached both a contractual duty and a duty of good faith and fair dealing by failing to tender promptly to their insureds alleged "undisputed amounts" in uninsured or underinsured motorist benefits (UM/UIM benefits). The trial court granted the insurers' preliminary objection in the nature of a demurrer for the insureds' failure to state cognizable causes of action under Pennsylvania law. We conclude that the insureds failed to establish that the insurers, prior to resolution of the insureds' claims, wrongfully withheld "undisputed amounts" of UM/UIM benefits. Accordingly, we affirm.

¶ 2 In their amended complaint, the insureds claimed that they incurred injuries in automobile accidents caused by tortfeasors who were uninsured or underinsured such that the insureds' injuries were not fully compensated by the tortfeasors. Consequently, the insureds filed claims for UM or UIM benefits with their own insurers. The insurers investigated the claims

and subsequently set aside reserve amounts purportedly based on their valuations of the insureds' claims. Some insurers made settlement offers that their insureds rejected. The insureds refer to these valuations, reserve amounts or settlement amounts, as the "undisputed amounts" they were entitled to collect promptly and unconditionally from their insurers. However, since the insureds and their respective insurers disagreed on the *total* valuation of the claims, the parties submitted the claims to arbitration pursuant to the terms of the automobile insurance policies. Pending arbitration, the insureds demanded payment of the "undisputed amounts." The insureds argued that the "undisputed amounts" should have been tendered promptly by the insurers because of the insurers' "nondelegable contractual and separate common law duties of good faith to pay amounts of policyholder claims which defendants have assessed as·their minimum liability." Amended Complaint, 4/9/99, at 6–7; Reproduced Record (R.R.) at 17A–18A. The insureds further claimed that, in every case, the insurers rejected the insureds' demands for payment of the "undisputed amounts" and that such rejection was a breach of contract and constituted bad faith on the insurers' part.

¶ 3 The insurers filed preliminary objections in the nature of a demurrer for the insureds' failure to state a cause of action. The trial court, the Honorable Stephen E. Levin, granted the insurers' preliminary objections and dismissed the insureds' complaint with prejudice on July 29, 1999. It is from this order that the insureds appeal. The insureds raise the following issues on appeal:

1. Whether [the insureds'] Amended Complaint satisfactorily pleaded a breach of contract action against [the insurers] when [the insurers] made an offer and/or determined the economic value of [the insureds'] UM/UIM benefit claims, hereinafter referred to as "Undisputed Amounts" and, failed upon demand, to tender that amount to [the insureds]?

2. Whether [the insureds'] Amended Complaint satisfactorily pleaded a cause of action for a breach of contract against [the insurers], where [the insurers'] UM and UIM policies contained ambiguous language and material omissions which created an expectation in the consuming public that [the insurers] would tender payment of "Undisputed Amounts" of [the insureds'] claims prior to arbitrating the "Excess Value/Disputed Amounts" of those claims?

3. Whether [the insureds'] Amended Complaint satisfactorily pleaded [the insurers'] breach of its common law and statutory duty of good faith and fair dealing when [the insurers] refused to promptly and unconditionally tender [to the insureds], the "Undisputed Amounts," of their UM/UIM benefit claims?

Brief for Appellants at 6.

¶ 4 A preliminary objection in the nature of a demurrer will be granted where the contested pleading is legally insufficient. *See* Pa.R.C.P. 1028(a)(4). "[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Mellon Bank, N.A. v. Fabinyi*, 437 Pa.Super. 559, 650 A.2d 895, 899 (1994).

 ¶ 5 Our standard of review for an order granting a preliminary objection in the nature of a demurrer is as follows:

All material facts set forth in the [pleading at issue] as well as all inferences reasonably deductible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should

be sustained, this doubt should be resolved in favor of overruling it. *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1057 (Pa.Super.1999) (quoting *McMahon v. Shea*, 547 Pa. 124, 688 A.2d 1179, 1181 (1997)) (citation omitted). *See also Fabinyi*, 650 A.2d at 899 (concluding that "trial court [is] only free to address the issue of whether [the] complaint, on its face, failed to assert a cause of action as a matter of law" and any doubt should be resolved by overruling the demurrer). "When reviewing a grant of demurrer, we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law." *CoreStates Bank*, 723 A.2d at 1057. Our scope of review is plenary. *See Bailey v. Storlazzi*, 729 A.2d 1206, 1211 (Pa.Super.1999).

¶ 6 We conclude initially that the trial court did not err in granting the demurrer to the breach of contract cause of action. Three elements are necessary to plead properly a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates*, 723 A.2d at 1058. In the present case, the existence of automobile insurance policies in effect at the time of the accidents and alleged damages are clearly set forth in the insureds' complaint. The insureds' challenge remained to plead sufficiently that the insurers breached a duty owed to the insureds. This they failed to do.

¶ 7 The insureds pled that the insurers "owed a duty to the [insureds] to pay for all damages which the [insureds] were legally entitled to recover from the operator of an uninsured or underinsured motor vehicle as a result of a vehicular collision" and that the insurers "breached [their] contracts with [insureds] by refusing to pay within a reasonable time period any amounts due to [insureds] under the terms of the contract, despite [insurers'] knowledge, based upon investigation, that an amount was likely to be due to [insureds] under the contract." Amended Complaint,

4/9/99, at 35; R.R. at 46A. The insureds argue that, despite the insurers' disagreement of the total amount of benefits due, the amount "likely due" is at least the reserve or settlement amount discerned by the insurers, which should have been paid promptly as it represented an "undisputed amount" of UM or UIM benefits. The insureds aver that the insurers' rejection of the insureds' demands to pay promptly such "undisputed amounts" supports their cause of action for breach of contract. *Id.* at 7; R.R. at 18A.

■ ¶ 8 The insureds neither pled sufficient material facts nor cited to pertinent contractual language that would establish a duty on the insurers promptly to pay "undisputed amounts" of UM or UIM benefits, to which the insureds were legally entitled to, prior to an arbitration decision setting the total amount of the claim where this amount is disagreed upon by the insured and insurer. *See* Pa.R.C.P. 1019 (stating that "material facts on which a cause of action ... is based shall be stated in a concise and summary form"). Moreover, the insureds fail to attach the pertinent parts of the insurance policies to their complaint as required by Pa.R.C.P. 1019(h). They merely assert that the duty exists without demonstrating how the duty arises. Their complaint is fatally flawed in this regard.

¶ 9 However, in their brief to this court, to establish the insurers' duty to pay "undisputed amounts" under these circumstances, the insureds assert that the language of the UM/UIM benefit provisions is ambiguous and fails to fulfill the reasonable expectations of the insureds. Brief for Appellants at 14–20. Although the insureds ask this court to construe the policy language in their favor, they still fail to explain how such purported ambiguity or disregard of their reasonable expectations establishes a contractual duty on the part of the insurer to promptly and unconditionally tender benefits that the insureds designate as "undisputed amounts."

¶ 10 Firstly, we will address the insureds' argument that the policy language is ambiguous. Interpretation of the language of an insurance policy is generally the role of the court, rather than the jury. *See Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983); *Loomer v. M.R.T. Flying Service, Inc.*, 384 Pa.Super. 244, 558 A.2d 103, 105 (1989) (stating that construction of an insurance policy is a question of law). "Where a provision of an insurance policy is ambiguous, it will be construed in favor of the insured." *Loomer*, 558 A.2d at 105.

> A provision of an insurance contract is "ambiguous" if reasonably intelligent people could differ as to its meaning. Where a provision of an insurance policy is ambiguous, it will be construed in favor of the insured. Where the terms of the insurance contract are not ambiguous, however, this Court must read the policy in its entirety and give the words therein their plain and proper meanings. In doing so, courts do not wish to convolute the plain meaning of a writing nor bestow upon the words a construction which is belied by the accepted and plain meaning of the language used.

*Id.* (citations omitted). A contract is not rendered ambiguous merely because the parties disagree upon its construction. *See Riccio v. Am. Republic Ins. Co.*, 453 Pa.Super. 364, 683 A.2d 1226, 1233 (1996), *aff'd*, 550 Pa. 254, 705 A.2d 422 (1997).

¶ 11 The insureds cite to the State Farm Mutual Insurance Company policy as representative of an ambiguous provision that must be construed in the insureds' favor to establish a duty upon the insurers to tender promptly so-called "undisputed amounts" of UM or UIM benefits. The provision is found under the subheading "Deciding Fault and Amount":

> Two questions must be decided by agreement between the insured and us:
> 1. Is the insured legally entitled to collect compensatory damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle; and
> 2. If so, in what amount?
> If there is no agreement, these two questions shall be decided by arbitration at the request of the insured or us....

State Farm Car Policy, Section III—Uninsured Motor Vehicle and Underinsured Motor Vehicle Coverages; R.R. at 103A–104A. Notably, the term "undisputed amount," is not found anywhere in this provision and the provision does not categorize UM or UIM benefits into "undisputed amounts" or "disputed amounts." The plain language of the provision does not establish a duty that the insurer must tender "undisputed amounts" of UM or UIM benefits promptly and unconditionally. Rather, it simply, clearly, and unambiguously indicates that if the amount owed to the insured is in dispute, then either party may request arbitration.

¶ 12 Nevertheless, the insureds argue that additional language would clarify the above provision and cure the purported ambiguity. They suggest the following language:

> If you, the insured, and we, the insurer, disagree as to the total value of your UM or UIM motorist claim, then we are not obligated to pay you any portion of your claim, not even the lesser amount we think it is worth, without having an arbitration to determine the total value. There are only two alternatives: (1) we settle your case at one time, in which event there will be no arbitration; or (2) a total value of your case is decided on one occasion by the arbitrators following a hearing. *Instead of paying you what we think your claim is worth and then proceeding to arbitration to determine if you are entitled to any more money, we reserve the right to withhold the amount of money, if any, we think your claim is worth and then proceed to arbitration to resolve your claim.*

Brief for Appellants at 17. The mere absence of this proposed language is not

enough to imply that the insurers have a contractual duty to promptly tender "undisputed amounts." We cannot rewrite an insurance contract or construe the language of a clear insurance contract provision to mean something not established by the plain meanings of the words used. *See Nationwide Mut. Ins. Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338, 1341 (1994). The policy provision as it stands is unambiguous and we must give it effect.

¶ 13 The insureds also assert that their reasonable expectations under the policy were defeated by the insurers' failure to tender "undisputed amounts" promptly and unconditionally. Brief for Appellants at 17–20. Since the provision at issue is unambiguous and we cannot rewrite the contract as suggested by the insureds, we fail to see how the insureds' reasonable expectations under the policies were left unfulfilled. *See e.g. Nationwide Mut. Ins. Co. v. Nixon,* 453 Pa.Super. 70, 682 A.2d 1310, 1313 (1996) ("When interpreting an allegedly ambiguous insurance contract, the court must focus its attention on the reasonable expectations of the insured.... When the language is clear and unambiguous, the court is required to give effect to that language.").

¶ 14 The insureds finally argue, in support of their cause of action for breach of contract, that insurance policies are contracts of adhesion and should therefore be construed in favor of the insureds in light of ambiguous policy language. Brief for Appellants at 20–21. As we have already concluded that the policy language is unambiguous, this argument also fails. We conclude that the insureds failed to plead or otherwise establish a contractual duty on the part of the insurer that would require the insurer, promptly and unconditionally, to pay "undisputed amounts" of UM or UIM benefits upon the insureds' demand where the amount of benefits due is in dispute and subject to arbitration as clearly provided in the policy. Accordingly, the trial court did not err in granting the demurrer to the insureds' cause of action for breach of contract.

¶ 15 Next, the insureds argue that the trial court erred by granting the demurrer to their cause of action alleging the insurers' breach of a common law and statutory duty of good faith and fair dealing for refusing to tender the "undisputed" amounts to their insureds promptly and unconditionally.

¶ 16 We conclude initially that common law claims for bad faith on the part of insurers are not remediable in Pennsylvania. *See Terletsky v. Prudential Property and Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994); *Keefe v. Prudential Property and Cas. Ins. Co.,* 203 F.3d 218, 224 (3d Cir.2000). Thus we are left to deal only with the insureds' statutory claim of bad faith.

¶ 17 Our state legislature has created the following statute to address bad faith claims in Pennsylvania:

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. This statute, however, does not define what types of conduct constitute bad faith. Our Supreme Court has stated that "'the utmost fair dealing should characterize the transactions between an insurance company and the insured.'" *Dercoli v. Pennsylvania Nat'l Mut. Ins. Co.,* 520 Pa. 471, 554 A.2d 906, 909 (1989) (quoting *Fedas v. Ins. Co. of Pennsylvania,* 300 Pa. 555, 151 A. 285

(1930)). An insurer's conduct constituting bad faith has been described as follows:

"Bad faith" on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. Moreover, when evaluating bad faith under section 8371, a trial court may look to (1) other cases construing the statute and the law of bad faith in general, (2) the plain meaning of the terms in the statute, and/or (3) other statutes addressing the same or similar subjects.

*MGA Ins. Co. v. Bakos,* 699 A.2d 751, 754–55 (Pa.Super.1997) (internal citations omitted).

¶ 18 Bad faith claims are fact-specific and depend on the conduct of the insurer vis-à-vis its insured.

The breach of the obligation to act in good faith cannot be precisely defined in all circumstances, however, examples of "bad faith" conduct include: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."

*Kaplan v. Cablevision of Pennsylvania, Inc.,* 448 Pa.Super. 306, 671 A.2d 716, 722 (1996) (quoting *Somers v. Somers,* 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992)).

¶ 19 We conclude that the insureds' complaint fails to sufficiently plead a cause of action for bad faith. The complaint alleges that each insurer acted in bad faith by repeatedly failing to pay "undisputed amounts" despite the insurers' knowledge that such amounts were legally due to the insureds and despite insurers' knowledge that a minimum amount was due based on existing medical evidence. Amended Complaint at 43–44; R.R. at 54A–55A. The insureds' complaint is falsely premised on the existence of "undisputed amounts," of which the insureds argue are represented by settlement offers or reserves.

¶ 20 We cannot conclude that settlement offers or reserves set aside for insureds' claims equate to "undisputed amounts" of benefits due under the policies. "Undisputed" has been defined as "[n]ot questioned or challenged; uncontested." BLACK'S LAW DICTIONARY 1528 (7ᵗʰ ed.1999). It is well established in Pennsylvania that settlements are not to be construed as admissions of liability. *See* 42 Pa.C.S. § 6141(a); *Strutz v. State Farm Mut. Ins. Co.,* 415 Pa.Super. 371, 609 A.2d 569, 570 (1992). Other courts, under facts similar to those in the present case, have stated: "[t]he court is unwilling to infer that settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith." *Kosierowski v. Allstate Ins. Co.,* 51 F.Supp.2d 583, 592 (E.D.Pa.1999). *See also Voland v. Farmers Ins. Co.,* 189 Ariz. 448, 943 P.2d 808, 812 (App.1997) ("Contrary to plaintiff's contention, that the carriers considered her claim's 'fair value' to be $30,000 and therefore offered to settle for that amount does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster ha[d] evaluated as being owed to the insured.' "). Likewise, the amount of reserves set aside by the insurer pursuant to claims filed by an insured cannot be construed as "undisputed amounts." Reserves are merely amounts set aside by insurers to cover potential future liabili-

ties. *See e.g.,* BLACK'S LAW DICTIONARY 1309 (7 th ed.1999) (defining policy reserve as "[a]n insurance company's reserve that represents the difference between net premiums and expected claims for a given year").

¶ 21 Recently, the United States Court of Appeals for the Third Circuit predicted that Pennsylvania would not recognize bad faith claims under circumstances strikingly similar to those in this case. *See Keefe v. Prudential Property and Cas. Ins. Co.,* 203 F.3d 218, 220–21 (3d Cir.2000). Keefe, the insured, injured her shoulder, knee, and wrist in an automobile accident with an uninsured driver in August 1995. She submitted a claim under her own UM policy, which provided that if insured and insurer could not agree on the amount of compensatory damages to which the insured was legally entitled, either party could make a written demand for arbitration. The insurer was uncertain about whether Keefe's wrist injury was due to the automobile accident or a pre-existing condition; therefore, the insurer requested medical records to substantiate Keefe's claim. Despite Keefe's failure to produce such records, Keefe requested that the insurer settle her claim at or near her policy limit of $200,000. After Keefe provided the requested medical records, Keefe requested that the insurer make at least a partial payment of benefits, although Keefe later denied that she had made such request. In response, the insurer made a settlement offer of $200,000. Finally, in March of 1997, the insurer paid this amount to Keefe despite the insurer's belief that the case was worth less than $200,000. Keefe filed suit in May of 1997, alleging, *inter alia,* bad faith under section 8371. The portion of UM benefits to cover Keefe's shoulder and knee injuries were "undisputed"; therefore, Keefe claimed that the insurer should have made prompt and unconditional payment of this portion of her claim. On appeal, the Third Circuit concluded:

[I]f Pennsylvania were to recognize a cause of action for bad faith for an insurance company's refusal to pay unconditionally the undisputed amount of a UM claim, it would do so only where the evidence demonstrated that two conditions had been met. The first is that the insurance company conducted, or the insured requested but was denied, a separate assessment of some part of her claim (i.e. that there was an undisputed amount). The second is, at least until such a duty is clearly established in law (so that the duty is a known duty), that the insured made a request for partial payment.

*Keefe,* 203 F.3d 218, 226. The court went on to explain the difficulty of dividing and precisely fixing damages in personal injury claims:

Until a partial final assessment is made or requested, there is a reasonable basis for failing to make [an] offer of partial settlement: namely, it is unclear what the separate injuries are worth, or what the plaintiff would have been legally entitled to recover for bodily injury if the uninsured motorist had had coverage. A request for a partial final assessment or evidence that the insurer conducted such a partial final assessment is a precondition of success on a bad faith claim because of the subjective components of a pain and suffering award. As the Arizona Supreme Court has noted, "a personal injury claim is unique and generally not divisible or susceptible to relatively precise evaluation or calculation. The 'pain and suffering'/general damage elements of a personal injury claim ... are inherently flexible and subject to different and potentially changing evaluations." *Voland v. Farmers Insurance Company of Arizona,* [189 Ariz. 448,] 943 P.2d [808,] 812 [(Ariz.Ct.App.1997)] (citing *LeFevre v. Westberry,* 590 So.2d 154, 163 (Ala. 1991)).

*Keefe,* 203 F.3d 218, 226.

¶ 22 In this case, the insureds' did not plead that they requested, or that any

insurer conducted, valuation of their claims in order to set a partial fixed amount of UM or UIM benefits. Even if they had properly pled that such partial valuation had been made, they would also be required to plead that both parties agreed that the amount of the partial valuation represented an "undisputed amount" of benefits due. In fact, without such agreement, there can be no "undisputed amount." Thus, the insureds failed to make a showing that "undisputed amounts" were ever established.

¶ 23 For the foregoing reasons, we conclude that the trial court did not err in granting the insurers' preliminary objection in the nature of a demurrer to the insureds' bad faith cause of action.

¶ 24 Order **AFFIRMED**.

¶ 25 President Judge McEWEN files a Concurring Statement.

McEWEN, President Judge, concurring:

¶ 1 Since the author of the opinion of decision has provided, in his usual fashion, a careful analysis and perceptive expression of view, I hasten to join in each of the conclusions reached in that opinion, and write only to emphasize that our decision today does not preclude a finding, under circumstances differing from those of the instant case, that an insurer has a duty to make a partial payment of a UM or UIM claim when timely requested by the insured, where there can be no dispute as to the entitlement of the insured to the amount requested under the policy [1], even where the insured contends that additional sums are due under the terms of the policy.

---

1. If a widow were to make a claim for UM benefits under a policy insuring her husband, and the only dispute between the parties was whether the policy was subject to stacking, the failure of the insurer to pay the amount not in dispute upon demand of the insured would, in my opinion, constitute bad faith.