**In re AUCTION HOUSES ANTITRUST LITIGATION**

**This document applies to: All Actions**

**No. 00 CIV. 0648(LAK).**

United States District Court,
S.D. New York.

April 13, 2001.

David Boies, Richard B. Drubel, Philip Korologos, Kimberly H. Schultz, Boies, Schiller & Flexner LLP, Lead Counsel for Plaintiffs.

Shepard Goldfein, Michael L. Weiner, Clifford H. Aronson, Skadden, Arps, Slate, Meagher & Flom LLP, for Defendants Christie's, Inc., and Christie's International plc.

Steven Alan Reiss, Howard B. Comet, Richard J. Davis, Weil, Gotshal & Manges LLP, for Defendants Sotheby's, Inc. and Sotheby's Holdings, Inc.

Scott T. Kragie, Keith E. Dobbins, Squire, Sanders & Dempsey LLP, for Objectors The Fataihi Company and Swicorp S.A.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Oscar Wilde once wrote that "life imitates art," and the litigation concerning the scope of the release to be included as part of the settlement of these class actions has taken on a decidedly Dickensian air.[1]

### I

As originally proposed, a term of this otherwise favorable settlement would have released Christie's and Sotheby's from all claims "based on any allegedly collusive activity or activities ... *wherever occurring or located* " except that (1) all class members would remain free to sue in foreign courts on the basis of foreign law for damages allegedly suffered in foreign auctions, and (2) class members who choose not to claim benefits under this settlement would retain also whatever rights they otherwise might have to sue in United States courts for damages allegedly suffered in foreign auctions.[2] A number of so-called Mixed Class Members—i.e., class members who have claims based both on U.S. and foreign auctions—objected, arguing that they should not be made to give up the right to sue here for damages sustained in foreign auctions as the price of participating in the benefits of this settlement, which were to be allocated purely on the basis of losses sustained in U.S. auctions. The Court agreed, and it conditioned approval of the settlement, insofar as remains relevant,[3] on deletion of the objectionable forum-limiting feature of the release.[4]

Rather than conform the settlement papers to this condition, the auction houses wrenched out of context language that the Court, in conditionally approving the set-

1. *See* CHARLES DICKENS, BLEAK HOUSE c.1 (New Amer. Library ed.1964).

2. Agreed motion, Exs. 1 & 2, ¶ 11(c).

3. The other condition of approval of the settlement subsequently has been satisfied.

4. *In re Auction Houses Antitrust Litig.,* No. 00 Civ. 0648(LAK), 2001 WL 170792, at *11–13, *17 (S.D.N.Y. Feb.22, 2001).

tlement, had used in distinguishing a Second Circuit case upon which they had relied and wrongly concluded that the point the Court found objectionable was simply that the Mixed Class Members would have received nothing for surrendering such rights as they had to sue in American courts with respect to claims based on foreign auctions. They and plaintiffs thereupon amended the settlement agreements to allocate $7 million in principal amount of discount coupons to the affected Mixed Class Members and sought approval of the altered settlement. The Court rejected that proposal as well, again insisting that the objectionable feature of the release be deleted.[5] The parties then abrogated the $7 million proposal. But that was not the end of it.

The auction house defendants insist that the Court's refusal to approve the release as originally drafted, which was based on its reading of *National Super Spuds, Inc. v. New York Mercantile Exchange*[6] and later cases, is erroneous and wish to preserve the ability to obtain appellate review of that point. Accordingly, they and the plaintiffs again have amended the settlement agreements to contemplate either an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or, failing certification of such an appeal, an appeal from a final judgment approving the settlement, in either case an appeal limited to the sole issue of the scope of the release.

Under the amended settlement agreements, the original form of release that the Court found objectionable (the "Original Release") would be replaced by a new release that does not contain the provision that the Court has declined to approve (the "New Release").[7] Thus, the New Release would not close U.S. fora to Class Members wishing to sue with respect to foreign auctions even if they collect proceeds of this settlement. It would remain in effect unless the auction houses persuade the Second Circuit that the settlement should have been approved with the Original Release, in which event the New Release would be rescinded and the Original Release would rise like a phoenix, reinstated.[8] Should that occur, Mixed Class Members who had received proceeds of the settlement which, under the Old Release, would require that they surrender any rights they may have to sue in the United States on claims relating to foreign auctions, would be notified and given the option of returning the settlement proceeds in order to preserve those rights.[9] The auction houses now move for certification of the release issue pursuant to Section 1292(b) or, alternatively, for approval of the newly modified settlement agreements and to preserve their right to appeal the release issue notwithstanding approval.

## II

"Section 1292(b) provides that a district judge may certify an order for interlocutory appeal if the judge (1) is 'of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion,' and (2) 'an immediate appeal from the

---

**5.** *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648(LAK), 2001 WL 290363 (S.D.N.Y. Mar.26, 2001).

**6.** 660 F.2d 9 (2d Cir.1981).

**7.** Lead counsel's memorandum in response to the auction houses' motion for certification, etc. ("Pl.Mem."), Exs. 1 & 2, ¶ 2; Lead counsel's renewed motion for final approval of settlement ("Renewed Motion"), Exs. A.1 & A.2, ¶ 2.

**8.** Pl. Mem., Exs. 1 & 2, ¶ 3; Renewed Motion, Exs. A.1 & A.2, ¶ 3.

**9.** Pl. Mem., Exs. 1 & 2, ¶ 6; Renewed Motion, Exs. A.1 & A.2, ¶ 6.

order may materially advance the ultimate termination of the litigation.'"[10] Even where these criteria are satisfied, however, "interlocutory orders are not to be certified routinely."[11] Rather, Section 1292(b) certification is reserved for cases of unusual significance, those in which a ruling is of practical importance going well beyond run-of-the-mill concerns of parties before the Court.[12]

The question the auction houses seek to take to the Court of Appeals is not a controlling one as to which there is a substantial ground for difference of opinion. As to the latter point, the Second Circuit, in this Court's view, has been entirely consistent in holding that one group of class members may not be compelled to give up something of value in order to enrich a settlement for the benefit of others.[13] As to the former, the question no longer is controlling, if it ever was. In view of the modification of the settlement to provide that the case is settled irrespective of the outcome of any appeal—that the New Release controls unless the auction houses succeed in obtaining a contrary ruling from the Circuit either by interlocutory appeal or by an appeal from the final judgment—the outcome of the case does not depend upon how the issue is resolved.

Nor, in light of the foregoing, would an immediate appeal materially advance the termination of the litigation. Assuming the Court approves the latest modification of the settlement, the case will be over for all practical purposes. All that would remain would be the auction houses' ef-forts, through an appeal from the final judgment, to have the Court of Appeals reinstate the Original Release. An interlocutory appeal could not accelerate the process.

Finally, the question that the auction houses seek to take up, while no doubt of modest significance to them, does not extend beyond their immediate interests. While they probably are correct in suggesting that the effect of *National Super Spuds, Inc.* on the scope of releases in class action settlements is an issue that arises in other cases, and perhaps will do so with greater frequency in the future, they overlook the fact that any uncertainty may be avoided by careful definition of the class or classes and appropriate allocation of settlement proceeds. The plaintiffs here could have sought recovery with respect to both U.S. and foreign auctions and settled the case in an appropriate manner, thus obviating any issue as to the scope of the release. The same is true in other cases. Hence, the problem for which the auction houses seek an appellate solution does not seem to be one of broad practical significance.

For all of the foregoing reasons, so much of the pending motion as seeks certification of an interlocutory appeal pursuant to Section 1292(b) is denied.

### III

The next question is whether the Court should approve the modified settlement agreements with their purported reserva-

---

10. *Romea v. Heiberger & Assocs.,* 988 F.Supp. 715, 716 (S.D.N.Y.1998).

11. *Id.* at 717; *see Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865–66 (2d Cir.1996) (interlocutory appeal "rare exception to the final judgment rule"); *Trinidad v. American Airlines, Inc.,* 932 F.Supp. 521, 528 (S.D.N.Y. 1996).

12. *See Romea, supra.*

13. E.g., *Weinberger v. Kendrick,* 698 F.2d 61, 77 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *National Super Spuds, Inc.,* 660 F.2d at 18–19; *see also Joel A. v. Giuliani,* 218 F.3d 132, 143 (2d Cir.2000).

tions of rights to appeal from the final judgment solely in order to litigate the scope of the release in the Second Circuit. Two points bear mention in that regard.

To begin, the parties recognize that some Mixed Class Members may have opted out already in order to avoid prejudice to their claims based on foreign auctions. They appropriately have provided for notifying those who have done so of the amendment to the settlement and permitting them to revoke their opt outs.

█ Next, there is no good reason why the Court should not approve the settlement as substantively fair,[14] reasonable and adequate by reason of the auction houses' attempt to preserve the release issue for appellate review. The amended settlement agreements specifically provide that the distribution of settlement proceeds shall take place as originally agreed without regard to the pendency of any such appeal.[15] Indeed, the only objection to approval is a contention that the parties' agreement that the settlement will proceed irrespective of the outcome of a reserved appeal puts the parties "into a position in which they lack[ ] the adversity necessary to meet the case or controversy requirement of Article III ." [16] That objection, however, does not go to the fairness of the settlement. It goes to the Court's power with respect to the form of the judgment, a matter discussed below.

## IV

█ There remains for consideration the question whether the Court appropri-

ately may enter judgment noting the auction houses' purported preservation of their right to appeal regarding the question whether the Court was obliged to reject the Original Release under *National Super Spuds, Inc.* As noted, some objectors contend that any such appeal would not present an Article III case or controversy inasmuch as the plaintiffs have acquiesced in the auction houses' proposal. But there are two short answers to this objection.

First, the fact that Plaintiffs' Lead Counsel have agreed to modify the settlement agreements to permit the auction houses to appeal this issue does not necessarily manifest any lack of adversity. Nowhere, to the Court's knowledge, have they agreed not to resist any such appeal.[17] In any case, it seems entirely likely that the objectors will seek leave to intervene for purposes of, or otherwise participate in, any appeal and thus may remedy any lack of adversity that otherwise might exist.

Even more basically, the question whether an appeal would present an Article III case or controversy would go to the jurisdiction of the Court of Appeals. It is not for this Court to render an advisory opinion as to whether the Court of Appeals would have jurisdiction in the event the auction houses appeal from the final judgment.

## V

Accordingly, the motion to certify an interlocutory appeal or, alternatively, for

---

14. The Court initially had reservations concerning the adequacy of notice of the changes in the settlement. The revised amendments to the settlement agreement, however, have eliminated those concerns by ensuring appropriate notice.

15. Pl. Mem., Exs. 1 & 2, ¶ 5; *see* Renewed Motion, Exs. 1 & 2, ¶ 5.

16. Fataihi Co. memo, at 5 (quoting *Keefe v. Prudential Prop. & Cas. Ins. Co.,* 203 F.3d 218, 223 (3d Cir.2000)).

17. The Court of course recognizes that Plaintiffs' Lead Counsel agreed to the Original Release in the first place. In light of the Court's rejection of the Original Release, however, it cannot simply be assumed that they would remain supine during an appeal.

approval of modified settlement agreements that preserve the right to appeal is granted to the extent that the modified settlement agreements are approved as fair, reasonable and adequate. The motion is denied in all other respects. Lead counsel's renewed motion for final approval of the settlement is granted. The parties shall submit an agreed form of final judgment within one week.

SO ORDERED.