## In re AUCTION HOUSES ANTITRUST LITIGATION.

Michael Zomber et al., on behalf of themselves and all others similarly situated, Consolidated Plaintiffs–Appellees,

Pamela Alper, Michael Alper, J & J Lubrano, Angelo Guido Terruzzi and Giovanna Terruzzi, Intervenors-Plaintiffs-Appellees-Cross-Appellants,

The Fataihi Company of Jeddah and Saudi Arabia, Swicorp S.A., Intervenors–Plaintiffs–Appellees.

v.

Christies, Inc., Christie's International PLC, Sotheby's Holdings, Inc., and Sotheby's, Inc., Consolidated-Defendants-Appellants-Cross-Appellees,

and

Anthony Tennant, Sr., Christopher M. Davidge, Diana D. Brooks, A. Alfred Taubman, and John Does 1–10, Consolidated–Defendants.

Docket Nos. 01–7626(L), 01–7708(XAP), 01–7712(XAP).

United States Court of Appeals, Second Circuit.

July 30, 2002.

Shepard Goldfein, Michael L. Weiner, Clifford H. Aronson, Thomas Pak; Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants–Appellants–Cross–Appellees Christie's, Inc. and Christie's International, Inc.

Steven Alan Reiss, Howard B. Comet, Richard J. Davis; Weil Gotshal & Manges LLP New York, NY, for Defendants–Appellants–Cross–Appellees Sotheby's, Inc. and Sotheby's Holdings, Inc.

David Boies, Philip C. Korogolos, Eric Brenner; Boies, Schiller & Flexner LLP, Armonk, NY; Richard B. Drubel; Boies, Schiller & Flexner LLP, Hanover, NH, for Plaintiffs–Appellees Michael Zomber et al.

J. Douglas Richards, Melvyn I. Weiss, Michael M. Buchman; Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY; Karen L. Morris, Seth D. Rigrodsky; Morris and Morris, Wilmington, DE, Arthur R. Miller, Cambridge, MA, of counsel; for Intervenors–Plaintiffs–Appellees–Cross–Appellants J & J Lubrano, Angelo Guido Terruzzi and Giovanna Terruzzi.

Scott T. Kragie; Squire, Sanders & Dempsey L.L.P., Washington, DC, for Intervenors–Plaintiffs–Appellees The Fataihi Company and Swicorp, S.A.

Adam P. Friedman; Wolff & Samson, Roseland, NJ; Robert P. Cummins, Thomas C. Cronin, Cummins & Cronin, Chicago, IL, for Intervenors–Plaintiffs–Appellees Pamela J. Alper and Michael N. Alper.

Present CABRANES, STRAUB, Circuit Judges, and GLEESON District Judge.[1]

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motions to dismiss the appeal are DENIED and the judgment of said District Court be and is AFFIRMED.

These appeals arise out of the settlement of consolidated class actions alleging that the defendant auction houses Sotheby's Inc. and Christie's Inc., together with their affiliated companies and certain officers and employees (collectively, the "Auction Houses"), violated section 1 of the Sherman Act, 15 U.S.C. § 1, by fixing the prices of certain auction services. Defendants Sotheby's and Christie's and their related companies challenge the refusal by the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge* ) to approve an earlier version of the settlement that included a waiver of Class members' rights to bring claims related to foreign auctions (which were not class claims) in United States courts. Intervenors Plaintiffs J & J Lubrano, Angelo Guido Terruzzi and Giovanna Terruzzi (collectively, "J & J Lubrano") cross-appeal the approval of the settlement, contending that the District Court abused its discretion in approving it because (a) the settlement unfairly prejudiced the foreign auction claims of some Class members, and (b) Lead Counsel for the Class allegedly labored under a "structural conflict [of interest]." These plaintiffs have also moved to dismiss defendants' appeal for lack of appellate jurisdiction, as have Intervenor Plaintiffs The Fataihi Company and Swicorp S.A. (collectively, "Fataihi"), Intervenor Plaintiffs Pamela J. Alper and Michael N. Alper (the "Alpers").[2] The Class also argues that we lack jurisdiction over the defendants' appeal, and defends the judgment of the District Court. We hold that (1) we have

---

1. The Honorable John Gleeson, United States District Judge for the Eastern District of New York, *sitting by designation.*

2. The Alpers have adopted the arguments of Fataihi for purposes of this appeal.

subject-matter jurisdiction over defendants' appeal, although we do not reach the issue of whether the Auction Houses waived their right to contest the District Court's rejection of the earlier settlement or of whether the dispute over the rejection is moot in light of the approved settlement; (2) the District Court was precluded from approving the original settlement by our decision in *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir.1981); and (3) the District Court did not abuse its discretion in approving the final settlement.

Accordingly, we deny the motions to dismiss the appeal, and affirm the judgment of the District Court.

## I

This appeal centers on the District Court's February 22, 2001 rejection of an earlier version of the final settlement which included a release provision (the "Original Release") the District Court found objectionable. The Original Release stated that all Class members who did not timely opt out of the Class would release (1) their domestic auction claims under federal or state antitrust laws and (2) all claims "based on the allegedly collusive activity" of defendants, "wherever occurring or located," but only if the Class members actually made a claim and received money from the settlement. Another portion of the Original Release, however, provided that, even if a Class Member fully participated in the settlement and took money from the settlement fund, the Original Release would not bar that Class Member from asserting foreign auction claims in a foreign country under foreign law. Thus, the Original Release would operate essentially as a choice of law (foreign law) and choice of forum (any appropriate foreign forum) provision with respect to Class members' (non-class) foreign auction claims; Class members with foreign auction claims would be required to give up whatever rights they might have to bring those auctions in United States courts or pursuant to United States law, even though no part of the settlement fund was allocated to compensate those Class members for those claims or for giving up the aforementioned rights.

The District Court rejected the settlement on the grounds that the Original Release rendered the settlement unfair as a matter of law pursuant to our decision in *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), because it impaired class members' foreign auction claims without compensation. *See In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648, 2001 WL 170792, at *12 (S.D.N.Y. Feb. 22, 2001) (quoting *Super Spuds*, 660 F.2d at 18–19).

The Class and the Auction Houses subsequently agreed that each Auction House would enter into a Revised Second Amendment to Original Settlement (collectively, the "Final Agreement"). Pursuant to the Final Agreement, the Original Release was replaced with one that did not impair Class members' rights to bring foreign auction claims in United States courts or pursuant to United States law, with all other material aspects of the settlement—including the amount and type of compensation—remaining the same. The Final Agreement also provided, however, that in the event of a successful appeal to this Court of the District Court's refusal to approve the settlement including the Original Release, the Original Release would be reinstated. Implicit in the Final Agreement, then, was a reservation of the Auction Houses' right to appeal the issue of whether *Super Spuds* precluded the District Court from approving the settlement including the Original Release.

On April 4, 2001, the Auction Houses moved for certification of the issue of whether *Super Spuds* precluded the District Court from approving the original settlement—including the Original Release—for Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b), or, in the alternative, approval of the settlement as modified by the Final Agreement. On April 13, 2001, the District Court denied the motion for certification, but granted the motion for approval of the settlement as modified. *See In re Auction Houses Antitrust Litig.*, 164 F.Supp.2d 345, 349–50 (S.D.N.Y.2001).

On May 15, 2001, the District Court approved the Agreed Form of Final Judgment, which provided, *inter alia*, that "[t]he [Auction Houses] have preserved their right to seek an appeal regarding [the issue of whether *Super Spuds* precluded the District Court from approving the settlement including the Original Release]; Lead Counsel consents that the [Auction Houses] may seek an appeal." The judgment was entered on May 17, 2001. This appeal followed.

On appeal, the Auction Houses argue that the District Court erred in holding that it was precluded, as a matter of law, from approving the settlement under *Super Spuds*. Counsel for Fataihi, counsel for J & J Lubrano, and Lead Counsel (representing the Class) all argue that we lack jurisdiction over this appeal. The Class and Fataihi also argue that the District Court correctly interpreted and applied *Super Spuds*. In a cross-appeal, J & J Lubrano argues that the District Court abused its discretion in approving the settlement (as modified by the Final Agreement) because (a) the settlement unfairly prejudiced the foreign auction claims of some Class members, and (b) Lead Counsel for the Class allegedly labored under a "structural conflict [of interest]" that had

been previously identified by the District Court.

## II

### A. Appellate Jurisdiction

■ We turn first to the threshold question of appellate jurisdiction. *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001) ("[B]efore deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction.") *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (federal courts may not assume that the constitutional limits to their jurisdiction are satisfied to decide the case on the merits).

Our jurisdiction is limited by both statute—we "have only the jurisdiction granted to [us] by Congress," *Carlyle Towers Condominium Ass'n v. FDIC*, 170 F.3d 301, 306 (2d Cir.1999)—and by Article III of the United States Constitution, which provides that we may hear only "Cases" or "Controversies," U.S. Const. Art. III, § 2; *see also Russman v. Board of Educ.*, 260 F.3d 114, 118 (2d Cir.2001). The Auction Houses assert that 28 U.S.C. § 1291, by which Congress granted us jurisdiction over appeals from "final decisions" of district courts, provides the statutory basis for jurisdiction in this case.

In support of their motions to dismiss the appeal, Fataihi and J & J Lubrano argue that reservation of the Auction Houses' right to "seek an appeal" in the Final Agreement was an improper attempt by the Class and the Auction Houses to confer jurisdiction on this Court by their own agreement. Fataihi further argues that the Auction Houses' appeal does not present a "case" or "controversy," as the Constitution requires, because the Class and the Auction Houses are not adverse as to the issue on appeal, inasmuch as they

both argued before the District Court in favor of approving the settlement including the provision which the District Court found objectionable (the "Original Release").

It is beyond peradventure that an agreement of the parties cannot by itself confer appellate jurisdiction. *See, e.g., Industrial Addition Ass'n v. Commissioner,* 323 U.S. 310, 313, 65 S.Ct. 289, 89 L.Ed. 260 (1945). In the instant case, however, the Auction Houses do not rest solely upon their agreement to establish jurisdiction. Rather, they contend that appellate jurisdiction exists because (1) the consent judgment is a "final decision" within the meaning of 28 U.S.C. § 1291; and (2) the instant appeal presents a concrete and immediate dispute between adverse parties. We agree.

With respect to the statutory limits on our jurisdiction: The Auction Houses have appealed from, *inter alia,* the final judgment entered on May 17, 2001, which resolved all of the parties' claims in the Litigation. This judgment is plainly a "final decision" within the meaning of 28 U.S.C. § 1291. *Cf. Weyant v. Okst,* 198 F.3d 311, 314 (2d Cir.1999) ("A judgment is said to be final if it conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order."); *Ellis v. Israel,* 12 F.3d 21, 23 (2d Cir.1993) ("A decision is final for purposes of section 1291 when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978))).

With respect to the constitutional limits on our jurisdiction: Fataihi's adversity argument—*i.e.,* that the Class and the Auction Houses are no longer adverse because the settlement (as modified by the Final Agreement) has been approved and the Class earlier argued in favor of the approval of a settlement that included the Original Release—ignores the history of the proceedings before the District Court. At the time the Class argued (along with the Auction Houses) in favor of the approval of a settlement that included the Original Release, the Auction Houses had not yet acquiesced to a settlement that did not include the Original Release. Once the Auction Houses did so (in the Final Agreement), it became in the interest of the Class to obtain approval of the settlement as modified by the Final Agreement. Thus, rather than join the Auction Houses' motion for certification pursuant to 28 U.S.C. § 1292(b), or, in the alternative, approval of the settlement as modified by the Final Agreement, the Class argued to the District Court only that it should approve the settlement as modified. The Class has also filed memoranda arguing that we should affirm the judgment of the District Court in this appeal. Accordingly, this appeal also meets the constitutional "case or controversy" requirement, inasmuch as it presents a "real and live, not feigned, academic, or conjectural" dispute, *see Russman,* 260 F.3d at 118, "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process," *see Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Although we have subject-matter jurisdiction over the appeal, the arguments in the motions to dismiss suggest that, by agreeing to the settlement that was ultimately approved by the District Court, the Auction Houses may have waived their right to contest the issue of the District Court's rejection of the earlier settlement, *see New York ex rel. Vacco v. Operation Rescue Nat'l,* 80 F.3d 64, 69 (2d Cir.1996) ("Appeal from a consent judgment is generally unavailable on the ground that the parties are deemed to have waived any

objections to matters within the scope of the judgment."), or may have rendered that issue moot, *see generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 3530, 3533.1, 3533.2 (2002). The Auction Houses contend that these doctrines are not applicable here in light of their express reservation of the issue, relying on decisions of other circuits suggesting or holding that express reservation of an issue preserves the right to appeal. *See Coughlin v. Regan,* 768 F.2d 468, 470 (1st Cir.1985) ("[F]or a party to consent to a judgment and still preserve his right to appeal, he must reserve that right unequivocally, as it will not be presumed."); *see also Keefe v. Prudential Prop. & Cas. Ins. Co.,* 203 F.3d 218, 223 (3d Cir.2000); *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers,* 132 F.3d 824, 828 (1st Cir.1997); *INB Banking Co. v. Iron Peddlers, Inc.,* 993 F.2d 1291, 1292 (7th Cir. 1993); *Dorse v. Armstrong World Indus., Inc.,* 798 F.2d 1372, 1375 (11th Cir.1986).

Because none of the cases cited by the Auction Houses involved the reservation of the issue of a District Court's rejection of a class action settlement, we are not persuaded that they support the Auction Houses' position here. Indeed, in the peculiar circumstance of a class action, in which a district court has an affirmative duty to insure that any settlement is fair to the absent class members, we think it unlikely that an express reservation in a settlement of the right to appeal the rejection of an earlier settlement should be given effect. In this case, however, we need not reach the issues of waiver or mootness, in light of our disposition on the merits.

**B.   The Auction Houses' Appeal**

█   In its oral and written statements, the District Court made unmistakably clear that (1) it considered itself constrained by *Super Spuds* to reject the settlement including the Original Release, and (2) absent that constraint, it would have approved the settlement. During a hearing held on April 9, 2001, regarding the Final Agreement, for example, the District Court stated:

> I believe that my imposition of the condition with respect to the release in the approval of this settlement was mandated as a matter of law by *National Super Spuds* and the cases in the Second Circuit that have followed it, and if I regarded myself as free, as a matter of discretion, to have approved it without that condition, I would have done so, and would do so now.
>
> . . . If you folks persuade the Second Circuit that it has jurisdiction over appeal from the final judgment here, and if you can persuade them that I have erred in my reading of *National Super Spuds* and its progeny, I would approve it without that condition.

Hr'g Tr. of Apr. 9, 2001, at 10–11. Similarly, in an order denying Fataihi's motion for reconsideration of the April 13, 2001, opinion approving the settlement as modified by the Final Agreement, the District Court stated:

> The Court conditioned its approval of the settlement on deletion of one term of the original release because it felt obliged as a matter of law to do so, notwithstanding its view that (a) defendants' insistence on the objectionable term was entirely reasonable, (b) *National Super Spuds*, the case which the Court construed as requiring it to act as it did, arguably is distinguishable, and (c) the value of the objectionable term— the venue—limiting term as applied to claims based on foreign auctions—was very small, perhaps even *de minimis*.

*In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648, 2001 WL 397706, at *1 (S.D.N.Y. Apr. 17, 2001). Accordingly, this appeal turns solely on the proper interpretation of *Super Spuds*—a matter of law—and we review the District Court's decision *de novo*. *Cf. Allstate Ins. Co. v. A.A. McNamara & Sons, Inc.*, 1 F.3d 133, 135 (2d Cir.1993) ("We review *de novo* a district judge's interpretation of the law of the state in which he sits."); *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir.1992) ("Because our decision on the validity of the settlement before us rests on the determination of novel issues of ERISA law, we review the district court's decision *de novo*.").

*Super Spuds* involved the settlement of a class action on behalf of all persons who liquidated long positions in Maine potato futures contracts between April 13 and May 7, 1976, during which time prices had allegedly been artificially depressed by various individuals and entities trading in the New York Mercantile Exchange. *See Leist v. Simplot*, 638 F.2d 283, 289–90 (2d Cir.1980), *facts incorporated by reference in Super Spuds*, 660 F.2d at 11. Plaintiffs alleged violations of the Commodities Exchange Act by the individuals and entities as well as by the Exchange. *Id.*

On August 15, 1977, the District Court in *Super Spuds* certified the class. *See Super Spuds*, 660 F.2d at 11. On December 15, 1978, the Clerk of Court sent notice to the class members, instructing each of them that if he wished to opt out, he was required to so do by letter to the Clerk postmarked by January 29, 1979. *Id.*

Nearly a year later—on December 14, 1979—lead counsel for the class and counsel for defendants agreed to a settlement. *Id.* at 13. The settlement agreement not only barred class members from bringing claims based on the liquidated contracts, but also barred all other claims by class members against the defendants, including claims based on contracts unliquidated at the close of trading on May 7, 1976. *Id.* at 14. In return, class members were to receive damages calculated solely on the contracts liquidated during the class period. *See id.*

Although the District Court directed that notice of the settlement be sent to the class members, the notice provided did not advise class members of the provision in the settlement agreement barring all claims, including those involving unliquidated contracts. *Id.* Rather, it directed class members to refer to the Stipulation of Settlement on file with the Clerk of Court "[f]or a complete description of the terms of the settlement." *Id.* The District Court approved the settlement over the objection of Dexter Richards, a class member who held contracts liquidated during the class period as well as contracts only liquidated after May 7, 1976, and Richards timely appealed. *See id.* at 15–16.

We reversed. First, we stated that there was "no justification for requiring Richards or persons similarly situated to release claims based on unliquidated contracts as part of a settlement in which payments to class members are to be determined solely on the basis of the contracts they liquidated." *Id.* at 18. Rejecting the contention that, despite the uncompensated release of claims based on unliquidated contracts, the settlement was fair to the class as a whole, we held that "[a]n advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class." *Id.* at 19.

Second, we held that "[w]ith respect to claims on unliquidated contracts, the notice

did not 'fairly apprise the ... members of the class of the terms of the proposed settlement.'" *Id.* at 21 (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.1975)) (ellipses in original). Accordingly, the notice was inadequate. *Id.*

In the twenty-one years since *Super Spuds,* we have never affirmed the approval of a class action settlement which included the uncompensated impairment of non-class claims unless the non-class claims were based on the *identical* factual predicate as the class claims. *See TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460–61 (2d Cir.1982); *cf. Weinberger v. Kendrick,* 698 F.2d 61, 77 (2d Cir.1982) (approving the release of "non-class" claims with compensation, albeit at a lower rate of compensation than that of "class" claims, where adequate notice had been given to the class, the scope of the case had been expanded to include the "non-class" claims before the class was certified, and the claims were based on "almost identical" factual allegations, *id.* at 68). The foreign auction claims in the instant case, although based on the same conspiracy to fix prices, do not rest upon the identical factual predicate as the United States auction claims.

Nevertheless, the Auction Houses argue that *Super Spuds* does not apply because here, unlike in *Super Spuds:* (1) the notice to and representation of the Class was adequate; (2) the non-class claims would be only impaired, rather than extinguished; and (3) in any event, the impairment would not prejudice the class members with foreign auction claims, because those claims allegedly cannot be brought in United States courts for other reasons.

We are unconvinced. Although the Original Release merely impairs, rather than extinguishes, the foreign auction claims, the impairment is an "uncompen-sated sacrifice of claims of members ... which were not within the description of claims assertable by the class." *Super Spuds,* 660 F.2d at 19. That the impairment may be slight is of no moment, as we cannot say that it is valueless (indeed, it obviously has value to the Auction Houses that argue so strenuously for approval of it), yet it is exacted without any compensation whatsoever. This is precisely what *Super Spuds* proscribes. The notice to, and representation of, Class members are similarly irrelevant, as an unfair settlement should not be approved even if both notice and representation were adequate. *See Masters Mates & Pilots Pension Plan & IRAP Litig.,* 957 F.2d at 1033.

In sum, the District Court correctly interpreted *Super Spuds* as requiring rejection of the settlement including the Original Release.

We next turn to the cross-appeal of J & J Lubrano.

## C. The Cross–Appeal

■ In its cross-appeal, J & J Lubrano attacks the District Court's approval of the settlement as modified by the Final Agreement. It contends that (1) the District Court did not sufficiently assess the settlement's fairness and the adequacy of Lead Counsel's representation of the Class; (2) Lead Counsel had a "structural conflict" that itself rendered the settlement unfair, which conflict was exacerbated because the size of the settlement was so large that the Auction Houses have indicated that they have few resources with which to pay other claims (such as the foreign auction claims); and (3) the settlement was unfair because it did not explicitly contain a provision exempting Class members with foreign auction claims from any *res judicata* effect of the final judgment on those claims. None of these arguments has merit.

J & J Lubrano's argument that the District Court's evaluation of the settlement process, including the representation of the Class, was inadequate borders on the frivolous. It is abundantly clear from the record before us that the District Court's management of this litigation was exemplary. More to the point, the District Court's evaluation of the settlement included an thorough analysis of both procedural fairness and substantive fairness, including consideration of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000).[3] *See Auction Houses*, 2001 WL 170792, at *5 *18. Thus, the District Court's evaluation was, to say the least, adequate. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85–86 (2d Cir.2001); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983).

J & J Lubrano's reliance on the District Court's statement regarding Lead Counsel's "structural conflict," *see Auction Houses*, 138 F.Supp.2d at 551, for the argument that the settlement as approved was tainted by that conflict, is misplaced. The District Court's statement, in context, was as follows:

> Here, the foreign auction claims, while mentioned in the complaint, never were among the claims pursued on behalf of the class, which was defined solely in terms of participation in U.S. auctions during the relevant period. The settlement was negotiated in terms of compensation to be paid with respect to claimed overcharges for services rendered in U.S. auctions. And while the Court does not question anyone's good faith or professionalism, this history explains how Plaintiffs' Lead Counsel have come to have a structural conflict *on this issue*. They reached a settlement that, as modified, called for payment of $412 million in cash and $125 million in principal amount of discount certificates to class members based on their overcharges in U.S. auctions. By doing so, they earned themselves a fee of more than $26.75 million, contingent upon the settlement becoming effective. At that moment, they gained a powerful incentive to protect the settlement and thus their large fee. They thus have an incentive to acquiesce in defendants' insistence that the deal proceed without modifying the "release." And that incentive has manifested itself in their willingness to allocate part of the outstanding recovery they gained with respect to claims based on U.S. auctions to those among them who, in addition, have claims based on foreign auctions.

*Id.* (emphasis added). As this quotation makes clear, any arguable "conflict" on the part of Lead Counsel related only to their compromise of the foreign auction claims. Thus, any "conflict" was cured by the District Court's insistence that any settlement not include an impairment of those claims.

■ We reject J & J Lubrano's argument that those claims were nevertheless impaired because of the size of the settlement. If the resolution of the claims of some putative plaintiffs will impair other

---

**3.** The *Grinnell* factors are:
(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463.

putative plaintiffs' ability to recover for other claims, the avenue by which the latter may protect their interest (in federal courts) is by a motion to certify a mandatory class pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. *See County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1302–03 (2d Cir.1990). *See generally Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834–37, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (describing "limited fund" class actions).[4] On such a motion, the party seeking certification of a mandatory "limited fund" class must show, at a minimum, that the fund is limited. *See Ortiz,* 527 U.S. at 848.

J & J Lubrano has not shown that a "limited fund" exists here. They rely principally on statements made by counsel for Sotheby's during his argument in favor of the original settlement, that payments beyond those which they had already agreed to (*i.e.,* $412 million in cash and discount certificates with a market value of $100 million) would present "serious questions" or "significant issues" regarding ability to pay. These statements do not, however, establish that Sotheby's—let alone the Auction Houses together—would be *unable* to pay more. Rather, they suggest that further payments would prove challenging.

Similarly unavailing is J & J Lubrano's reliance on the opinion of an expert appointed by the District Court that "the defendants (*one* in particular) *may* have a cash flow problem" if faced with the prospect of *immediate* payment of $512 million in cash. *See* Economic Assessment of Proposed Class Settlement dated Jan. 18, 2001, at 23 (emphasis added). Again, this statement does not establish that the settlement has exhausted the Auction Houses' ability to pay other claims. Rather, it merely identifies a "potential ... problem" that the expert opines is remedied by the use of discount certificates. *Id.*

Finally, we find no merit in the argument that the settlement impermissibly impaired the foreign auction claims because it did not include a provision exempting Class members with foreign auction claims from any *res judicata* effect of the final judgment on those claims. J & J Lubrano itself argues that *res judicata* would be "completely inapplicable" to the foreign auction claims in these circumstances,[5] and that, therefore, the only prejudice to Class members with foreign auction claims is "the danger that another court ... might reach an incorrect conclusion." J & J Lubrano Br. at 53–54 n. 15. To the extent any such "danger" impairs the foreign auction claims at all, the impairment in *de minimis.*

### III

In sum, we hold that:

(1) We have subject-matter jurisdiction over the Auction Houses' appeal from the consent judgment, although we do not reach the issue of whether the Auction Houses waived their right to contest the District Court's rejection of the earlier settlement or of whether the dispute over the rejection is moot in light of the approved settlement;

(2) the District Court properly concluded that it was precluded from approving

---

4. J & J Lubrano did not formally move before the District Court for the certification of a mandatory class, although it did argue in a motion to intervene (after the settlement was approved) that "the settlement in this case could exhaust the assets of Defendants, so that a 'limited fund' is available to satisfy both foreign and domestic auction claims." Objec-

tor's Mot. to Intervene dated Apr. 27, 2001, at 5. We assume without deciding that this argument preserved the issue for our review.

5. We express no opinion on the issue of the preclusive effect of the judgment in the instant case.

**522**

the original settlement because it was unfair as a matter of law under *National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9 (2d Cir.1981); and

(3) the District Court did not abuse its discretion in approving the settlement as modified by the Final Agreement.

Accordingly, we deny the motions to dismiss the appeal, and affirm the judgment of the District Court.