*Guthrie v. Rainbow Fencing Inc.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2023
No. 23-350

**ROBERT GUTHRIE,**
*Plaintiff-Appellant,*

v.

**RAINBOW FENCING INC., LAWSON BURGE,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of New York

---

ARGUED: JANUARY 8, 2024
DECIDED: AUGUST 30, 2024

---

Before:      MENASHI, NATHAN, and KAHN, *Circuit Judges*.

Robert Guthrie filed this action against his former employer, Rainbow Fencing Inc., seeking unpaid wages as well as statutory damages for the failure to provide the wage notices and wage statements that New York law requires. The district court entered a

default judgment with respect to the unpaid wages but determined that Guthrie lacked standing to bring a claim for statutory damages because he had not alleged an injury-in-fact. We agree with the district court that a plaintiff lacks standing to pursue statutory damages for a technical violation—such as a failure to provide statutorily required notices—unless the plaintiff has plausibly alleged that the violation led to an injury-in-fact. Because Guthrie did not provide such a plausible allegation, we affirm the judgment of the district court.

------

> ABDUL K. HASSAN, Abdul Hassan Law Group, PLLC, Queens Village, New York, *for Plaintiff-Appellant.*
>
> No appearance *for Defendants-Appellees.*

------

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Robert Guthrie sued his former employer, Rainbow Fencing Inc. ("RFI"), for unpaid wages as well as for statutory damages arising from its failure to provide the wage notices and wage statements that New York law requires. *See* N.Y. Lab. L. § 195. RFI defaulted, and the district court entered a default judgment for Guthrie except with respect to his claim for statutory damages. The district court concluded that Guthrie lacked standing to pursue that claim because he failed to allege that the failure to provide the notices and statements caused him to sustain an injury-in-fact sufficient to meet the case-or-controversy requirement of Article III.

2

On appeal, Guthrie argues that (1) he did not need to meet the requirements of Article III standing to pursue his claim for statutory damages because the district court could exercise supplemental jurisdiction over that claim, and (2) he met the injury-in-fact requirement regardless. We agree with the district court that Guthrie cannot rely on supplemental jurisdiction in the absence of Article III standing. We further agree that a plaintiff must adequately allege a concrete injury-in-fact resulting from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under New York Labor Law § 195. Because Guthrie did not do so, we affirm the judgment of the district court.

## BACKGROUND

### I

RFI, a business based in Brooklyn with about twenty-two employees, provides fencing services and repairs. RFI employed Guthrie as a welder from 2014 to 2021. During that time, Guthrie earned between $12.50 and $17.50 per hour and worked between 44.5 and 54.5 hours per week. Guthrie alleged that "[a]t all times relevant herein, [he] was not paid any wages for his overtime hours … except that about 1-2 times each month, [he] was paid for about 8 overtime hours … at his straight regular hourly rate instead of at 1.5 times his regular hourly rate." App'x 8. Guthrie sued RFI in the Eastern District of New York to recover the unpaid wages under the federal Fair Labor Standards Act. *See* 29 U.S.C. § 207(a)(1) (requiring an employer to pay an employee 150 percent of the employee's hourly rate for time worked in excess of forty hours in a week). Guthrie also alleged that he never received the wage notices and wage statements that the New York Labor Law required RFI to provide.

3

Section 195 of the Labor Law—which was adopted as part of New York's Wage Theft Prevention Act, 2010 N.Y. Sess. Laws 1446-58 ("WTPA")—requires an employer to provide an employee, at the time of hiring, with a notice (1) describing the employee's rate of pay for regular and for overtime hours; (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information. N.Y. Lab. L. § 195(1)(a). In addition, each time wages are paid, the employer must furnish a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances. *Id.* § 195(3). The Labor Law provides for statutory damages of up to $10,000 for the failure to provide the required wage notices and wage statements. *Id.* § 198(1)(b), (d).

RFI—and Lawson Burge, the CEO of RFI—failed to answer or otherwise to respond to Guthrie's complaint. Guthrie moved for a default judgment. A magistrate judge recommended that a default judgment be entered against RFI and that Guthrie be awarded a total of $91,243 in damages—a figure that included $3,200 in unpaid minimum wages, $42,421.50 in unpaid overtime wages, and $45,621.50 in liquidated damages—but that Guthrie's claim for statutory damages relating to the notices and statements be dismissed for lack of standing. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832 (E.D.N.Y. Dec. 13, 2022). The district court adopted the report and recommendation of the magistrate judge. *See Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023). Guthrie timely appealed the judgment dismissing his claim for statutory damages.

4

## DISCUSSION

Guthrie raises two arguments on appeal. First, he argues that he did not need to satisfy the requirements of Article III standing with respect to his state-law claim for statutory damages because the district court could exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367. Second, he argues that he satisfied the injury-in-fact requirement of Article III regardless.

## I

Guthrie argues that he did not need to demonstrate Article III standing for his state-law claim because the district court may exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367. "[T]he relevant inquiry is not whether the wage notice and wage statement claims, independent of the federal overtime claims, satisfy the requirements of Article III," he suggests, but "whether the wage notice and wage statement claims 'are so related to the [FLSA] claims' that they form part of the same case as the FLSA claims over which the court undisputedly has federal subject matter jurisdiction." Appellant's Br. 17 (quoting 28 U.S.C. § 1367(a)). If the claims are so related, according to Guthrie, "then the Article III injury/subject matter jurisdiction over the FLSA overtime claims extends to the wage notice and wage statement claims under state law." *Id.* Guthrie's argument, in other words, is that if he can satisfy the requirements of the supplemental jurisdiction statute, he does not need to demonstrate Article III standing for his state-law claim.

That is incorrect. Guthrie misses the distinction between the jurisdiction that Congress has conferred on the federal courts by

5

statute, on the one hand, and the case-or-controversy requirement of Article III, on the other. "Subject-matter jurisdiction," however, "is an Art[icle] III *as well as* a statutory requirement." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (emphasis added). Federal courts "have only the power that is authorized by Article III of the Constitution *and* the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (emphasis added). Accordingly, "[o]ur jurisdiction is limited by both statute—we have only the jurisdiction granted to us by Congress—and by Article III of the United States Constitution, which provides that we may hear only Cases or Controversies." *In re Auction Houses Antitrust Litig.*, 42 F. App'x 511, 515 (2d Cir. 2002) (internal quotation marks, alteration, and citation omitted).

In addition to falling within the statutory authorization that the supplemental jurisdiction statute provides, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). The Supreme Court has said so directly: While the Court has recognized that "federal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case," it has "never" applied that "rationale … to permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing, that 'serve to identify those disputes which are appropriately resolved through the judicial process.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351-52 (2006) (alteration omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149,

155 (1990)). It has never done so because its "standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press." *Id.* at 352.

We agree with the district court that the supplemental jurisdiction statute does not excuse Guthrie from demonstrating that he has standing to maintain his state-law claim for statutory damages.

## II

Guthrie argues in the alternative that he has standing because his complaint adequately alleged an injury-in-fact. This argument implicates a disagreement among the district courts because, as the district court observed in this case, "courts in the Second Circuit have reached different conclusions when weighing the sufficiency of a plaintiff's allegations to show Article III standing to pursue [New York Labor Law] wage notice and wage statement claims in federal court." *Guthrie*, 2023 WL 2206568, at *5. In our view, the Supreme Court clarified the appropriate standard in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). In light of that decision, we agree with the district court that a plaintiff cannot rely on "technical violations" of the Labor Law but must allege "actual injuries suffered as a result of the alleged … wage notice and wage statement violations." *Guthrie*, 2023 WL 2206568, at *6. Because Guthrie failed to allege an actual injury, his claim for statutory damages was properly dismissed.

## A

In *TransUnion*, the plaintiff filed a class action complaint against TransUnion LLC, a credit reporting agency, seeking statutory and punitive damages pursuant to the Fair Credit Reporting Act

7

("FCRA"). TransUnion had created a product called "OFAC Name Screen Alert," which aimed to identify consumers whom the Office of Foreign Assets Control deemed to be security risks, but the product "generated many false positives." 594 U.S. at 419-20. As a result, credit reports identified "[t]housands of law-abiding Americans" as potential "terrorists, drug traffickers, or serious criminals." *Id.* at 420.

One such person, Sergio Ramirez, sought to address the problem by requesting his credit file and other information that the FCRA obligated TransUnion to provide. TransUnion mailed Ramirez his credit file and the statutorily required summary of rights, and it disclosed the OFAC alert in Ramirez's file in a second mailing sent the following day. *Id.* Ramirez alleged in his lawsuit that TransUnion not only had "failed to follow reasonable procedures to ensure the accuracy of information in his credit file," but it also "failed to provide him with *all* the information in his credit file"—because it omitted the alert in the first mailing—and "violated its obligation to provide him with a summary of his rights 'with each written disclosure'" as the FCRA required. *Id.* at 421 (quoting 15 U.S.C. § 1681g(c)(2)). "The jury awarded each class member $984.22 in statutory damages and $6,353.08 in punitive damages for a total award of more than $60 million." *Id.* at 421-22.

The Supreme Court reversed the judgment because many of the class members lacked standing to sue TransUnion. The Court again "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 426 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Instead, "Article III standing requires a concrete

8

injury even in the context of a statutory violation." *Id.* (quoting *Spokeo*, 578 U.S. at 341). Although "Congress may enact legal prohibitions and obligations" and "may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations," it remains the case that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. Thus, "an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 426-27.

The Court applied this principle of "[n]o concrete harm, no standing" to Ramirez's class action. *Id.* at 442. It determined that the "1,853 class members whose credit reports were provided to third-party businesses suffered a concrete harm" and therefore had standing to sue TransUnion for failing to follow reasonable procedures. *Id.* But "[t]he 6,332 class members whose credit reports were not provided to third-party businesses did not suffer a concrete harm and thus do not have standing as to the reasonable-procedures claim." *Id.* As for the claim that TransUnion did not comply with the statutory requirements for providing disclosures to consumers, the plaintiffs had offered "no evidence that, other than Ramirez, a single other class member so much as *opened* the dual mailings, nor that they were confused, distressed, or relied on the information in any way." *Id.* at 440 (internal quotation marks omitted). Accordingly, "none of the 8,185 class members other than the named plaintiff Ramirez suffered a concrete harm" from the noncompliant disclosures that would confer standing to pursue the claim. *Id.* at 442. "Without any

9

evidence of harm caused by the format of the mailings," statutorily noncompliant mailings "are bare procedural violations, divorced from any concrete harm," that do "not suffice for Article III standing." *Id.* at 440 (internal quotation marks and alteration omitted).

B

After *TransUnion*, we explained that "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself*." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (emphasis added) (citing *TransUnion*, 594 U.S. at 424-30). Consistent with that principle, many district courts in this circuit have recognized that allegations amounting only to a technical violation of § 195 of the New York Labor Law—without a resulting concrete injury—fail to establish Article III standing to pursue a claim for damages based on the violation.[1]

---

[1] *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC* (*Freeland I*), 681 F. Supp. 3d 58, 78 (W.D.N.Y. 2023) ("Courts in this Circuit have … held that, without more, technical violations of NYLL § 195(3), such as a truncated employer name, a missing phone number, missing gross deductions, missing gross wages, and even failure to provide the notice at all fail to confer standing."); *see also Montiel v. Mi Esquina Deli Corp.*, No. 23-CV-7870, 2024 WL 3509302, at *3 (E.D.N.Y. July 23, 2024); *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353, 2024 WL 1632255, at *6 (E.D.N.Y. Apr. 15, 2024), *report and recommendation adopted* (E.D.N.Y. June 10, 2024); *Cao v. Wedding in Paris LLC*, No. 20-CV-2336, 2024 WL 1518847, at *23 (E.D.N.Y. Mar. 29, 2024); *Feng v. Kelai Corp.*, No. 18-CV-12329, 2024 WL 1348654, at *18 (S.D.N.Y. Mar. 29, 2024); *Bayne v. NAPW, Inc.*, No. 18-CV-3591, 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Yanes v. Juan & Jon. Inc.*, No. 19-CV-0201, 2024 WL 1072034, at *7 (E.D.N.Y. Mar. 11, 2024); *Jurado v. Bisbas Gourmet Deli Inc.*, No. 23-CV-5175, 2024 WL 694100, at *2 (E.D.N.Y. Feb. 20, 2024); *Gao v.*

Some plaintiffs—including Guthrie—have invoked the notion of "informational injury" in support of standing to maintain a § 195 claim. The Supreme Court "has recognized that the unlawful withholding of requested information" may, under some circumstances, "cause[] 'a sufficiently distinct injury to provide standing to sue.'" *TransUnion*, 594 U.S. at 454 (Thomas, J., dissenting) (quoting *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989)). In *TransUnion*, the United States as amicus curiae argued "that the plaintiffs suffered a concrete 'informational injury' under several of [the] Court's precedents" that was sufficient to establish standing. *Id.* at 441 (majority opinion). The Court rejected this argument and clarified that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Following that guidance, many district courts have applied the rule that an

*Savour Sichuan Inc.*, No. 19-CV-2515, 2024 WL 664718, at *26 (S.D.N.Y. Feb. 16, 2024); *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, at *4 (S.D.N.Y. Feb. 12, 2024); *Cui v. D Prime, Inc.*, No. 20-CV-3667, 2023 WL 8283717, at *1 (E.D.N.Y. Nov. 30, 2023); *Proano v. Melrose Home Improvement Corp.*, No. 22-CV-6050, 2023 WL 8003303, at *4 (E.D.N.Y. Nov. 17, 2023); *Cartagena v. Sixth Ave. W. Assocs. LLC*, No. 23-CV-3611, 2023 WL 6318170, at *2 (S.D.N.Y. Sept. 28, 2023); *Montalvo v. Paul Bar & Rest. Corp.*, No. 22-CV-1423, 2023 WL 5928361, at *3 (S.D.N.Y. Sept. 13, 2023); *Echevarria v. ABC Corp.*, No. 21-CV-4959, 2023 WL 5880417, at *6 (E.D.N.Y. Sept. 11, 2023); *Chen v. Hunan Manor Enter., Inc.*, No. 17-CV-802, 2023 WL 5574854, at *13 (S.D.N.Y. Aug. 29, 2023); *Munoz v. Grp. US Mgmt. LLC*, No. 22-CV-4038, 2023 WL 5390204, at *6-7 (S.D.N.Y. Aug. 22, 2023); *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 56 (S.D.N.Y. 2023); *Lucero v. Shaker Contractors Corp.*, No. 21-CV-8675, 2023 WL 4936225, at *3 (S.D.N.Y. July 27, 2023).

11

"informational injury" without a concrete downstream injury-in-fact does not establish standing to maintain a claim under § 195.[2]

But other district courts have reached conclusions inconsistent with *TransUnion*. One district court has held that even though the complaint was "unspecific as to the downstream injuries that resulted from these alleged statutory violations, such allegations are not necessary to supply standing." *Bueno v. Buzinover*, No. 22-CV-2216, 2023 WL 2387113, at *2 (S.D.N.Y. Mar. 7, 2023). Another district court has held that even if plaintiffs "allege only the bare assertion that they never received their statutorily required wage statements and notices," there is standing if "the realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the face of the pleadings." *Bello v. Pro-Line Pumping Corp.*, No. 22-CV-4081, 2023 WL 8260830, at *9 (E.D.N.Y. June 20, 2023), *report and recommendation adopted* (E.D.N.Y. July 19, 2023).[3] These district courts "exercised

---

[2] *See Cartagena*, 2023 WL 6318170, at *2 ("In *TransUnion*, the Supreme Court made clear that plaintiffs asserting an informational injury must allege some 'downstream consequences from failing to receive the required information.' Therefore, to have standing to bring a wage notice or wage statement claim, the plaintiff must allege injury stemming from the statutory violation.") (citation omitted) (quoting *TransUnion*, 594 U.S. at 442); *see also Cuellar v. Kings Juice Bar Deli Inc.*, No. 23-CV-4293, 2024 WL 3063792, at *1 (E.D.N.Y. June 20, 2024); *Rivera v. PLS Check Cashers of N.Y., Inc.*, No. 22-CV-5642, 2024 WL 263218, at *8 (S.D.N.Y. Jan. 24, 2024); *Freeland I*, 681 F. Supp. 3d at 77-78; *Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 415-17 (S.D.N.Y. 2023); *Quieju v. La Jugueria Inc.*, No. 23-CV-264, 2023 WL 3073518, at *1-2 (E.D.N.Y. Apr. 25, 2023); *Shi v. TL & CG Inc.*, No. 19-CV-08502, 2022 WL 2669156, at *8 (S.D.N.Y. July 11, 2022).

[3] *See also Gunthorpes v. IM. Grp., LLC*, No. 21-CV-5140, 2024 WL 2031191, at *8 (E.D.N.Y. Apr. 11, 2024) ("[I]f an employer's failure to provide wage

12

jurisdiction over such claims, without requiring a specific showing as to the downstream impact on the plaintiff of the non-provision of the required notice," *Bueno*, 2023 WL 2387113, at *3, on the theory that "the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves," *Bello*, 2023 WL 8260830, at *9 (citing *Bueno*, 2023 WL 2387113, at *3). We do not doubt that the state legislature had the purpose to empower employees. But if that legislative purpose were enough to establish an injury, it would amount to "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). The Supreme Court has "rejected" that proposition. *Id.*

Accordingly, we agree with those district courts that have held that a plaintiff must show some causal connection between the lack of

statements or wage notices were considered a purely technical violation, then no employee would ever have standing to sue under the WTPA and the statutory damages provisions would be rendered meaningless and unenforceable."), *report and recommendation adopted*, No. 21-CV-5140, 2024 WL 2022688 (E.D.N.Y. May 7, 2024); *Lin v. Bund Dumpling House Inc.*, No. 22-CV-6989, 2023 WL 7688886, at *8 (E.D.N.Y. Sept. 26, 2023) (same), *report and recommendation adopted*, No. 22-CV-6989, 2024 WL 1259358 (E.D.N.Y. Mar. 25, 2024); *Aguilar v. Page X Corp.*, No. 20-CV-5527, 2023 WL 7687226, at *8 (E.D.N.Y. Aug. 28, 2023) (same), *report and recommendation adopted*, No. 20-CV-5527, 2023 WL 9104385 (E.D.N.Y. Oct. 5, 2023).

accurate notices and the downstream harm. The legislature may have intended to empower employees to advocate for themselves, but unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.[4] Because the elements of Article III standing "are not

---

[4] In a number of cases, district courts have concluded that plaintiffs adequately alleged that the lack of accurate notices caused a downstream harm. *See, e.g.*, *Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948, 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) ("Kaur plausibly alleges that her wage statements showed fewer hours than what she actually worked, which prevented her from determining and seeking payment for the precise amount of her unpaid wages and she was thus harmed by being deprived of her income for longer than she would have been had she been able to timely raise her underpayment earlier. This financial harm is a tangible downstream consequence of the failure to receive required information.") (internal quotation marks, alterations, and citation omitted); *Santamaria v. Vee Techs., Inc.*, No. 22-CV-4472, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024) ("Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid. So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here. That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements."); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) ("Plaintiffs here actually received inaccurate wage notices, which did not include a tabulation of hours and overtime, and which thereby prevented them from knowing whether, and to what extent, they had been underpaid during the nine-month period. Without a record of hours worked, plaintiffs have further remained unable to determine whether the remedial payments

14

mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot "assume[] [t]his conclusion without analysis" or rely on "speculation and conjecture." *Quieju*, 2023 WL 3073518, at \*2. Rather, the plaintiff-employee must support a plausible "theory as to *how* he was injured by [the] defendants' failure to provide the required documents." *Id.*[5]

At the same time, some district courts have imposed too high a burden on plaintiffs-employees in § 195 cases, suggesting that they must demonstrate that "their lack of notice resulted in an injury

issued by TransPerfect have adequately compensated them for their overtime hours. Accordingly, the injury suffered by plaintiffs is not merely hypothetical.").

[5] *See also Perez*, 2024 WL 1632255, at \*5 ("Plaintiff did not allege facts linking any legally cognizable injury that he personally experienced to [his employer's] failure to provide wage statements and wage notices under the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. Plaintiff has offered no theory as to *how* he was injured by Defendants' failure to provide the required documents.") (citation omitted); *Shi v. TL & CG Inc.*, No. 19-CV-08502, 2023 WL 5827598, at \*3 (S.D.N.Y. Sept. 8, 2023) ("[T]he consequences of Defendants' failure to provide proper wage notices are entirely speculative.").

15

greater than [their employers'] minimum wage, overtime, and spread-of-hours wage violations" because only such a greater injury would entail "consequences beyond this lawsuit." *Pastrana v. Mr. Taco LLC*, No. 18-CV-09374, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), *report and recommendation adopted*, No. 18-CV-9374, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). To reach that conclusion, these district courts have often invoked our court's holding, in the context of tester standing, that a plaintiff-tester who failed to receive statutorily required disclosures "must show that he has an 'interest in using the information beyond bringing his lawsuit.'" *Harty*, 28 F.4th at 444 (alterations omitted) (quoting *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).[6] In our view, an employee who has actually lost wages is not analogous to a plaintiff-tester. A "tester" who seeks to promote compliance with statutory disclosure requirements through lawsuits must show some concrete interest in each lawsuit to have standing. Otherwise, the courts would confer on such a plaintiff "a

---

[6] *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC (Freeland II)*, No. 22-CV-6415, 2024 WL 2702201, at *4 (W.D.N.Y. May 24, 2024) ("Although Plaintiff alleges that the inaccurate statements hampered his ability to enforce his legal rights, this harm does not show an interest in using the information 'beyond bringing [this] lawsuit.'"); *Barbosa v. Phoenix Sutton Str. Inc.*, No. 22-CV-0666, 2024 WL 1835320, at *3 (E.D.N.Y. Apr. 26, 2024) ("In other words, a plaintiff must show that he has an interest in using the information beyond bringing his lawsuit.") (quoting *Harty*, 28 F.4th at 444); *Jackson v. ProAmpac LLC*, 694 F. Supp. 3d 352, 363 (S.D.N.Y. 2023) ("Although Plaintiffs specifically allege the inaccurate notices delayed Plaintiffs' ability to enforce their legal rights (and therein prevent or prosecute the alleged wage theft), these harms do not show an interest in using the information 'beyond bringing [this] lawsuit.'") (quoting *Harty*, 28 F.4th at 444).

freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). By contrast, a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract.

## C

Guthrie argues that he satisfied the injury-in-fact requirement of *TransUnion*. We disagree. Before the district court—and again before this court—Guthrie identified potential harms that *could* result from an employer's failure to provide wage notices and wage statements. The lack of such notices and statements might impair "an employee's ability to seek relief for violations they may not have information about," for example, or result in a "lack of proper documentation to apply for public benefits." *Guthrie*, 2023 WL 2206568, at *4. Guthrie explains that wage statements may be "critical" for employees to determine "whether they are being robbed by the employer," "whether the hours and wages are correct," "whether the deductions for taxes are being made and in the correct amount," and "whether other deductions for health insurance, life insurance, retirement funds, and a variety of important matters are being made and in the correct amounts." Appellant's Br. 38. In addition, employees may need wage statements to file their taxes or to apply for public benefits, bank loans, credit cards, and other employment. *See id.* at 39.

We recognize that the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee. But Guthrie has not plausibly alleged

17

that RFI's failure to provide the wage notices and wage statements in this case caused him to suffer any of those harms. Guthrie's complaint offered only the following allegations with respect to the wage notices and wage statements:

- "At all times relevant herein, neither Defendant provided Plaintiff with the notice(s) required by NYLL 195(1)." App'x 8 (¶ 21).

- "At all times relevant herein, neither Defendant provided Plaintiff with the statement(s) required by NYLL 195(3)." *Id.* (¶ 22).

- "At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the notice(s) required by NYLL 195(1)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b), as well as an injunction directing defendants to comply with NYLL 195(1)." *Id.* at 12 (¶ 50).

- "At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiff with the statement(s) required by NYLL 195(3)—Plaintiff is therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d), as well as an injunction directing Defendants to comply with NYLL 195(1)." *Id.* (¶ 51).

Like the putative class members in *TransUnion*, Guthrie failed to identify a concrete downstream harm he suffered as a result of the statutory violation.

18

In *Maddox v. Bank of New York Mellon Trust Company, N.A.*, we considered a New York statute that "creates a private right to collect an escalating cash penalty" if a mortgagee delays recording a mortgage satisfaction until "more than thirty days after the mortgage is paid off." 19 F.4th 58, 64 (2d Cir. 2021). On appeal, the plaintiffs identified several harms that could result from such a delay. The delayed recording "may create and sustain an actionable cloud on title to the property securing the discharged mortgage debt," "risks creating the false appearance that the borrower has not paid the underlying debt and is thus more indebted and less creditworthy," may "mak[e] it difficult [for the borrower] to obtain financing" while his credit is adversely affected, and could cause anxiety for the borrower. *Id.* at 64-65. But plaintiffs "must 'plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief.'" *Id.* at 65-66 (quoting *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)). And the plaintiffs in that case had either "not alleged that th[e] purported risk materialized" or provided allegations that were "implausible." *Id.*

So too here. Like the district court, we do "not disagree" that "possible injuries" could result from violations of § 195. *Guthrie*, 2023 WL 2206568, at *4. But Guthrie "fails to link the general harms an employee *might* experience to any harms that Mr. Guthrie *did*, in fact, experience." *Id.* Without plausible allegations that he suffered a concrete injury because of RFI's failure to provide the required notices and statements, Guthrie lacks standing to sue for that statutory violation.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.